**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| VISTA ACQUISITIONS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION FILE NO. |
| | : | _____ |
| WEST SHORE WALDEN LLC; | : | |
| WEST SHORE, LLC; John Doe 1; | : | COMPLAINT AND |
| John Doe 2; and John Doe 3, | : | JURY DEMAND |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff VISTA ACQUISITIONS, LLC ("Vista") hereby files their Complaint against Defendants West Shore Walden, LLC ("West Shore Walden"); West Shore, LLC ("West Shore"); and John Does 1 – 3 for tortious interference, fraud, and RICO/business conspiracy. Vista also seeks punitive damages and attorneys' fees. In support of its claim, Vista alleges, on information and belief, as follows:

## NATURE OF THE ACTION

Vista is under contract to purchase property located at 1000 Chatham Center Drive, Savannah, Ga, PIC 20739-01013 (the "Subject Property"). In anticipation of purchasing and obtaining the Subject Property, Vista petitioned the City of Savannah

KH699813.DOCX 20

to change the zoning restrictions of its property from B-C (Community Business) to RMF-2-25 (Residential Multi-Family, 25 Units per Acre). West Shore Walden owns property located at 100 Walden Lane, Savannah, GA, PIN 20739-01009, which is located directly across from Vista's property. West Shore Walden's property is an apartment complex.

As part of a goal to increase its supply of higher density housing, the City of Savannah voted to approve Vista's rezoning petition on November 9, 2021. The rezoning permitted Vista to develop a residential apartment complex—across the street from West Shore Walden's apartments. Before the City of Savannah approved Vista's rezoning petition at the final rezoning hearing, Vista was in communication with West Shore Walden on multiple occasions to review any issues that West Shore Walden may have felt were apparent and necessary for Vista and the City of Savannah to consider.

On the last possible day (December 9, 2021), West Shore Walden filed a slapdash Petition for Writ of Certiorari containing bogus allegations that the City of Savannah had inadequate information to approve Vista's rezoning request. Vista opposed West Shore Walden's claims and sought to dismiss the Petition for Writ of Certiorari on multiple grounds. The Superior Court of Chatham County scheduled a

hearing on Vista's motions to dismiss, but West Shore Walden dismissed its case without prejudice on the eve of the hearing, foreclosing a hearing.

Vista now seeks damages for these tortious actions along with Defendants' larger, national agenda of economic sabotage.

## THE PARTIES

1.

Plaintiff VISTA ACQUISITIONS, LLC ("Vista") is a limited liability corporation organized and existing under the laws of the State of Georgia with its principal office address at 2964 Peachtree Road, Suite 585, Atlanta, GA, 30305, USA. Vista can be served at its registered agent, Douglas Krevolin, who is located at 1201 West Peachtree Street, Suite 3250, Atlanta, GA, 30309, USA.

2.

West Shore Walden, LLC ("West Shore Walden") is a foreign limited liability company organized and existing under the laws of the State of Delaware with its principal office address at One International Place, Suite 3900, Boston, MA, 02110. West Shore Walden can be served at its registered agent, Cogency Global Inc., which is located at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA, 30076. West Shore Walden, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

3.

West Shore, LLC ("West Shore") is a limited liability company organized and existing under the laws of the State of Delaware with its principal office address at One International Place, Suite 3900, Boston, MA, 02110. West Shore can be served at its registered agent, Cogency Global Inc., which is located at 45 School Street, Suite 202, Boston MA, 02108.

4.

John Does 1-3 are currently unknown individuals or entities who, upon information and belief, were involved in West Shore Walden's scheme to discourage residential real estate competition in the City of Savannah.

5.

At all times alleged herein, the above-named Defendants include any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives, and any and all other persons acting on their behalf.

6.

At all times herein mentioned, each of the above-mentioned Defendants were the agents, servants, partners, predecessors in interest, and joint venturers of each other, and were at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, joint enterprise, and/or joint venture.

## **JURISDICTION**

7.

This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331, as the claims asserted herein arise, *inter alia*, under and pursuant to 18 U.S.C. 1961, *et seq*; and 28 U.S.C. § 1367, which provides jurisdiction for Plaintiff's supplemental state law claims.

8.

This action also contains counts originating in the common law of the State of Georgia concerning tortious interference and fraud.

9.

Personal jurisdiction comports with due process under the United States Constitution, the long-arm statute of Georgia, O.C.G.A. § 9-10-91, and the provisions of 18 U.S.C. § 1965(b) and (d).

10.

Without limiting the generality of the foregoing, each Defendant (directly or through agents who were at the time acting with actual and/or apparent authority and within the scope of such authority) has:

(a)      transacted business in Georgia;

(b)      availed themselves intentionally of the benefits of doing business in Georgia;

(c)      caused tortious damage by act or omission in Georgia;

(d)      caused tortious damage in Georgia by acts or omissions committed outside such jurisdiction while (i) regularly doing business or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

(e)      committed acts and omissions that Defendants knew or should have known would cause damage (and, in fact, did cause damage) in Georgia to Plaintiffs and Georgia consumers while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving such substantial revenue from goods used or consumed or services rendered in such jurisdiction;

(f)     engaged in a conspiracy with others doing business in Georgia that caused tortious damage in Georgia; and/or

(g)     otherwise had the requisite minimum contacts with Georgia such that, under the circumstances, it is fair and reasonable to require Defendants to come to Court to defend this action.

## VENUE

11.

Venue is proper under 28 U.S.C. § 1391(b)(2), because, *inter alia*, a substantial part of the events or acts giving rise to the causes of action alleged in this Complaint arose in, among other places, this District and the state of Georgia, and the harmful effects of Defendants fraud and wrongful conspiracy were felt in, among other places, this District. In addition, venue is proper under 18 U.S.C. § 1965 because Plaintiff resides in this District.

## **OPERATIVE FACTS**

12.

During the City of Savannah's adoption of a City-wide rezoning plan in September 2019, the City of Savannah zoned 1000 Chatham Center Drive, Savannah, GA, PIN 20739-01013 (the "Subject Property") as B-C – Community

Business ("BC Zone"). The Subject Property's future land use designation was commercial suburban.

13.

In anticipation of acquiring the Subject Property, Vista desired to purchase the land, rezone the land, and develop a multi-family residential apartment complex with a density of twenty-five (25) units per acre.

14.

Since stand-alone apartment complexes were not permitted within the Subject Property's current zoning requirements, Vista was required to submit a rezoning request in anticipation of its purchase of the Subject Property.

15.

Vista's ability and interest in purchasing the Subject Property is wholly based on its ability to have the Subject Property rezoned. Without the rezoning of the Subject Property, Vista would not have any use for the Subject Property and would not be interested in purchasing the Subject Property.

16.

On August 23, 2021, Vista, along with the current owner of the Subject Property, PHRM Holdings LLC, petitioned the City of Savannah to have the Subject

Property rezoned from B-C (community Business) to RMF-2-25 (Multifamily residential – 25 dwellings per acre). *See* Exhibit [A] (the "Rezoning Petition").

17.

Across from the Subject Property is a property commonly known as Walden at Chatham Center, with an address of 100 Walden Lane, Savannah, GA Pin 20739 01009, which is owned by West Shore Walden.

18.

Following the submission of Vista's Rezoning Petition, there were multiple public meetings whereby Vista provided information and detail regarding its plans for the Subject Property while availing itself to the public to answer questions and hear concerns.

19.

On September 21, 2021, the Chatham County – Savannah Metropolitan Planning Commission held its regular meeting. As part of its regular meeting, the Planning Commission considered Vista's Rezoning Petition. Marcus Lotson, Director of Development Services of the Planning Commission presented Vista's Rezoning Petition to the entire Planning Commission and recommended its approval as a "staff recommendation."

20.

In anticipation of the staff recommendation, Mr. Lotson prepared a "Staff Report" which detailed Vista's Rezoning Petition and provided an overview of the impact of Vista's proposal. *See* Exhibit [B] (the "Staff Report"). The Staff Report outlined the existing development pattern of the area surrounding the Subject Property, the impact and suitability of the proposed rezoning, and the future land use, amongst other important variables for consideration.

21.

The Staff Report also provided comment on behalf of the Planning Commission based on review criteria prescribed in the Savannah Zoning Ordinance Sec. 3.5.8. As required by the Savannah Zoning Ordinance Sec. 3.5.8, the Planning Commission opined based on the following review criteria:

a. **Suitability and Community Need**

  i.  Whether the range of uses permitted by the proposed zoning district is more suitable than the range of uses that is permitted by the current zoning district.
  ii. Whether the proposed zoning district addresses a specific need in the county or city.

b. **Compatibility**

  i.  Whether the zoning proposal will adversely affect the existing use or usability of adjacent or nearby property;

    ii.    Whether the zoning proposal is compatible with the present zoning pattern and conforming uses of nearby property and the character of the surrounding area.

    iii.    Whether there are other existing or changing conditions affecting the use and development of the property which give supporting grounds for either approval or disapproval of the zoning proposal.

c. **Consistency**

Whether the zoning proposal is in conformity with the policy and intent of the Comprehensive Plan and other adopted plans, such as a redevelopment plan or small area plan.

d. **Reasonable Use**

Whether the property to be affected by the zoning proposal has a reasonable use as currently zoned.

e. **Adequate Public Services**

Whether adequate school, public safety and emergency facilities, road, ingress and egress, parks, wastewater treatment, water supply and stormwater drainage facilities are available for the uses and d0ensities that are permitted in the proposed zoning district.

22.

Per the Staff Report, "all property owners within 300 feet of the subject property were sent notices of the proposed rezoning. Public notice was posted on site." Exhibit B. On information and belief, since the Walden Apartments are located across the street from the Subject Property, West Shore received notice of the Public

Commission meeting and the Staff Report. A representative of West Shore attended the Planning Commission meeting.

23.

Reporting and presenting on behalf of Vista in the Planning Commission meeting was Harold B. Yellin, a zoning land use attorney based out of Savannah, Georgia. In Mr. Yellin's short remarks, he noted that a site plan was submitted to the Planning Commission for illustrative purposes and noted that the site would include seven (7) buildings on fifteen (15) acres, with two entrances. Mr. Yellin also noted that due to the size of the site, there was ample room for setbacks and buffers. Lastly, Mr. Yellin stated that a more specific site plan would be presented to the Planning Commission for review upon a rezoning decision. Mr. Yellin concluded that the Planning Commission should follow the staff's recommendation that Vista's Petition be approved.

24.

As part of the Planning Commission meeting, audience members were allowed to ask certain questions, make comments, and offer points that they wished the Planning Commission to consider before approving the recommendation. The first person to make an audience comment was David Sacco, who acknowledged that he was there on behalf of the Walden Apartments and West Shore Walden, LLC.

Mr. Sacco stated "We're just here to gain information. We are not objecting at this time, but we would like a little bit more time to understand exactly what this project would entail." At no point did Mr. Sacco object or express concern. Mr. Sacco serves as the Controller of West Shore and acted on behalf of and in concert with all Defendants.

25.

At that time, Mr. Lotson gave an overview of the rezoning and development process. For instance, Mr. Sacco and Defendants were informed that it would take over a month before a decision would be reached and if there were any questions, those could be asked to the Planning Commission or Vista. It was made clear that any concerns that Mr. Sacco or Defendants may have had, could be taken into consideration before a final decision was rendered.

26.

In an effort to ensure full transparency and to make himself available for questions, Mr. Yellin on behalf of Vista, offered his contact information and encouraged Mr. Sacco to contact him with any questions or concerns.

27.

At the conclusion of the Planning Commission meeting, the vote to approve Vista's Rezoning Petition was approved with a twelve to zero vote, with two commission members absent.

28.

Following the September 21, 2021 Planning Commission meeting, there was an October 28, 2021 City Council hearing where no objections to Vista's Rezoning Petition were raised.

29.

Defendants had multiple opportunities to engage with Vista or express their concerns before the October 28, 2021 hearing. Mr. Yellin, on behalf of Vista, proactively reached out to counsel for West Shore to review any potential concerns regarding the rezoning request. No concerns were brought to Vista's attention and there was never any mention from any party that Vista's rezoning petition would be opposed.

30.

Instead of engaging with Vista to advance any concerns, on October 28, 2021, West Shore Walden, through its attorney, J. Patrick Connell, wrote a letter to the City of Savannah opposing Vista's Rezoning Petition. West Shore Walden argued

that the City of Savannah did not have sufficient information to approve the Rezoning Petition and threatened that approving such petition without that information would be "a manifest abuse of the zoning power by the City…." *See* Exhibit [C].

31.

After the October 28, 2021 hearing and receipt of West Shore Waldens' October 28, 2021 letter, Mr. Yellin, on behalf of Vista, made the City Council aware that he had proactively reached out to counsel for West Shore for concerns, and counsel for West Shore had no substantive feedback.

32.

Notwithstanding West Shore Walden's October 28th letter, on November 9, 2021, the City of Savannah approved Vista's petition and permitted the rezoning of the Subject Property from B-C (Community Business) to RMF-2-25 (Residential Multi-Family, 25 Units per Acre).

33.

Under Georgia law, a party has 30 days to appeal a zoning decision. O.C.G.A. § 5-4-6 (a). On exactly the thirtieth day—December 9, 2021—West Shore filed its Petition for Writ of Certiorari (the "Petition for Writ") appealing the City of Savannah's November 9, 2021 rezoning decision. *See* Exhibit [D]. The Petition for

Writ forced Vista to suspend its purchase of the Subject Property and, consequently, halt future development plans.

34.

Because Defendants had access to the Staff Report, the Planning Commission, and Vista, Defendants knew that certain claims and allegations made in West Shore Walden's Petition for Writ were not supported by the material facts necessary to support its allegations. Indeed, those claims were false and constituted a deceptive purpose on which to challenge a zoning decision.

35.

For instance, Paragraph 17 of the Petition Writ claims that the City Council failed to "follow its own zoning procedures, ignored mandatory zoning requirements and the Subject Property's future land use designation, and deprived themselves of key information relating to Vista's proposed development of the Subject Property." These are bald-faced untruths. Defendants had full and complete access to the intended development concept and plans for the Subject Property and requested them on September 17, 2021 through its associated counsel, Stephen Tilbrook of Akerman LLP. *See* Exhibit [E].

36.

Also, in Paragraphs 21-22 of the Petition for Writ claims that West Shore Walden "will suffer substantial damage" from the Savannah City Council's decision to rezone the Subject Property. West Shore Walden never actually specified the impact it would allegedly suffer. Rather, on information and belief, the true motivation for filing the Petition for Writ was simply to do whatever it took (whether legitimate or not) to delay Vista's plans in order for West Shore Walden to preserve its economic advantage. Defendants cannot disavow knowledge of or ignore facts that they deliberately sought and received.

37.

On January 19, 2022, attorneys for Vista, wrote a letter to West Shore Walden requesting that it (1) dismiss the Petition; (2) cease and desist its tortious interference and other unfair business practices; and (3) provide written confirmation of West Shore Walden's compliance with this demand. Vista's letter requested a response in writing by January 19, 2022. *See* Exhibit [F].

38.

In addition to requesting that West Shore Walden dismiss its petition, Vista made West Shore Walden aware that its actions against Vista were repetitive of other frivolous litigation brought by West Shore entities in Florida to undermine

potentially competitive projects solely for the purpose of economic gain and not based upon a legitimate zoning concern. *See* Exhibit [G].

39.

West Shore Walden never responded to Vista's January 19, 2022 letter.

40.

On January 21, 2022, Vista filed a Motion to Dismiss and Request for Expedited Hearing ("Motion to Dismiss"). In its Motion to Dismiss, Vista argued that West Shore Walden failed to properly serve its Petition for Writ. See Exhibit [H].

41.

On January 31, 2022, Vista filed a Motion to Dismiss for Failure to Meet Statutory Requirements ("Motion to Dismiss for Failure to Meet Statutory Requirements"). In its Motion to Dismiss for Failure Meet Statutory Requirements, Vista argued that West Shore Walden failed to comply with state law requiring it to post a certiorari bond conditioned to pay any of the adverse parties' damages and a certificate from Respondent (the City of Savannah) approving the bond. *See* Exhibit [I].

42.

West Shore Walden never filed a responsive pleading to the two Motions to Dismiss. It became clear that West Shore Walden never intended to present the court or the affected parties with real concerns about the rezoning of the Subject Property. Rather, West Shore Walden intended to perpetrate a fraud in order to sabotage Vista's ability to purchase and develop the Subject Property.

43.

On February 7, 2022, the Superior Court of Chatham County granted Vista's request for an expedited hearing and scheduled a hearing for February 14, 2022, on Vista's Motion to Dismiss and Vista's Motion to Dismiss for Failure to Meet Statutory Requirements. *See* Exhibit [J].

44.

On Saturday, February 12, 2022, West Shore Walden voluntarily dismissed its Petition pursuant to O.C.G.A. § 9-11-41(a)(1) without prejudice meaning that West Shore Walden could refile its Petition for Writ in six months. *See* Exhibit [K].

45.

This last-minute dismissal was just another delay tactic to hold Vista's purchase and development of the Subject property hostage for the next six months with the specter of a renewed Petition for Writ of Certiorari.

46.

All of these acts were done solely for the purpose of economic gain and not based upon a legitimate zoning concern.

### *West Shore Walden's Prior Actions*

47.

In February 2020, West Shore Legacy, LLC, an affiliate and/or subsidiary of West Shore, commenced a Petition for Administrative Hearing in Alachua County, Florida alleging that the approval of a competitor's (Fickling and Company, Inc. and NGI Acquisitions) rezoning petition was not in compliance with existing statute. (Case No. 20-1562GM). *See* Exhibit [G].

48.

In July 2020, Fickling and Company, Inc. and NGI Acquisitions filed a joint motion for sanctions alleging that West Shore Legacy, LLC's counsel "knew, or should have known, that certain claims and allegations made in West Shore's Petition for Administrative Hearing ("Petition") in this case are not supported by the material facts necessary to establish the claims or allegations…." *See* Exhibit [G].

49.

This pattern and practice of filing frivolous actions is part of a broader campaign to manipulate the housing market to Defendants' benefit by improperly monopolizing its interests.

50.

These are not ordinary steps in an effort to properly protect business interests or object to zoning decisions. These actions are part of Defendants' deceptive and misleading scheme to delay or sabotage competition.

## COUNT I
## Civil RICO Violations
## (18 U.S.C. § 1962 (c))

51.

Vista incorporates by reference each paragraph above as if fully set forth herein.

52.

This count sets forth a claim for damages resulting from the Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq*.

53.

West Shore, West Shore Walden, and John Does 1-3 are each "persons" who are capable of holding a legal or beneficial interest in property under 18 U.S.C. § 1961(3).

54.

An enterprise need not be a specific legal entity but rather may be "any union or group of individuals associate in fact although not a legal entity."

55.

West Shore, West Shore Walden, and John Does 1-3 constitute an enterprise of individuals who are associated in fact under 18 U.S.C. § 1961(4).

56.

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ." 18 U.S.C. § 1962(c). Each Defendant conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

57.

West Shore, in conspiracy with West Shore Walden and John Does 1-3, directed and intentionally filed a Petition for Writ which assisted and furthered Defendants' scheme to halt and interfere with Vista's purchase and development of the Subject Property.

58.

West Shore at all times had the opportunity to confer with Vista to outline its concerns for rezoning the Subject Property. West Shore in conspiracy with West Shore Walden and John Does 1-3, directed and intentionally did not confer with Vista because Defendants only intent was to halt and interfere with Vista's purchase and development of the Subject Property.

59.

This unlawful and fraudulent conduct resulted in pecuniary gain to each of the Defendants and operated to the financial detriment of Vista.

60.

Defendants John Doe 1-3 constituted an "association in fact" enterprise under 18 U.S.C. § 1961(4), because they were a group of individuals associated in fact, although not a legal entity. As an "association in fact" enterprise, John Does 1-3 had (a) a purpose – to perpetrate fraud; (b) relationships among those

associated with the enterprise – each of them exercising a position of authority; and

(c) longevity sufficient to permit John Does 1-3 to pursue the enterprise's purpose.

61.

In violation of 18 U.S.C. § 1962(d), John Does 1-3 conspired to violate the

provisions of 18 U.S.C. § 1962(b) and 18 U.S.C. § 1962(c).

62.

John Does 1-3 have harmed Plaintiff by perpetrating a scheme to defraud

Plaintiffs and others. In particular, John Does 1-3 attended relevant meetings

regarding Vista's rezoning petition, took communication on behalf of West Shore,

and acted in concert to further the financial detriment of Vista

63.

Plaintiff has suffered financial injury by reasons of Defendants and John

Does 1-3's violations of 18 U.S.C. § 1962, and is entitled to judgement against

John Does 1-3 for all resulting damages. Among other injuries, Plaintiff has

suffered injury by, as a proximate result of John Does 1-3's fraudulent scheme to

freeze it out of the Savannah housing market. Those damages consist of monetary

damages from delay in closing on the Subject Property, monetary damages from

delay in acquiring the purchase loan, monetary damages from delay in

development and construction, monetary damages from the procurement of

professional consultants, monetary damages from additional costs incurred by the

Subject Property's seller, and monetary damages from delay in receipt of rental

income (which continues to increase daily). Therefore, pursuant to 18 U.S.C. §

1964(c), Plaintiff is entitled to recover treble damages.

64.

Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to the reasonable

attorneys' fees and cost incurred by Plaintiffs to prosecute this lawsuit.

**COUNT II**
**Violations of Georgia Civil RICO Act**

65.

Vista incorporates by reference each paragraph above as if fully set forth

herein.

66.

The scheme and conduct of Defendants evidence the establishment of an

enterprise through a pattern of racketeering activity that is unlawful under the

Georgia Racketeer Influenced and Corrupt Organization Act, O.C.G.A. §§ 16-14-1

et seq.

67.

Vista's RICO claim alleged herein is premised upon Defendants' commission of predicate acts which resulted in the taking of Vista's ability to purchase and develop the Subject Land without just compensation in violation of their rights under the Georgia Constitution.

68.

Defendants willfully conducted and/or participated directly or indirectly in the conduct of the affairs and engaged in a pattern of racketeering activity and for the unlawful purpose of defrauding others.

69.

To date, as a result of the fraud perpetuated by Defendants and their racketeering activity, Vista has been improperly deprived of approximately 7,995,000 of substantial value appreciation of the purchase and development of the Subject Property amongst other damages. Those damages include, but are not limited to:

    i.    monetary damages from delay in closing on the Subject Property;

    ii.    monetary damages from delay in acquiring the purchase loan;

    iii.    monetary damages from delay in development and construction;

    iv.    monetary damages from the procurement of professional consultants;

v.    monetary damages from additional costs incurred by the Subject Property's seller; and

vi.   monetary damages from delay in receipt of rental income (which continues to increase daily).

70.

West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3, made false statements within the jurisdiction of a department and/or agency of the state government of the State of Georgia, to wit: The City of Savannah.

71.

Through their Petition for Writ, J. Patrick Connell, counsel for Defendant West Shore Walden, LLC, acting at the direction of West Shore, LLC and/or John Does 1-3, made the subject false statements for the purpose of deceiving the City of Savannah into delaying Vista's ability to purchase and develop the Subject Property while the City of Savannah resolved the complaints made by Defendants in their Petition for Writ.

72.

Those false statements occurred during the Planning Commission meeting when West Shore Walden reported that "we do not object at this time." Other false statements were made in West Shore Walden's October 28, 2021 letter and its

December 9, 2021 Petition for Writ. These false statements were made for the purpose of falsefully presenting to the City of Savannah that there was a legitimate zoning concern.

73.

Because the City of Savannah relied and acted upon the false statements made by West Shore Walden in its Petition for Writ, the City of Savannah used its power and inadvertently forced Vista to halt its purchase of the Subject Property and halt all development on the Subject Property.

74.

Prior to making these false statements to the City of Savannah, West Shore Walden, acting at the direction of West Shore, LLC, conspired with John Does 1-3, formed an intention to use the false statements to induce the City of Savannah to use its power to inadvertently force Vista to halt its purchase of the Subject Property and halt all potential development on the Subject Property.

**The Predicate Acts**

**A. False Statements in a Matter Within the Jurisdiction of a Government Agency O.C.G.A. § 16-10-20.**

75.

Defendants have engaged in more than two acts of making false statements in a matter within the jurisdiction of a government agency, in violation of O.C.G.A. §

16-10-20. Making such false statements within the jurisdiction of a government agency constitutes racketeering activity under Georgia law pursuant to O.C.G.A. § 16-14-3(9)(A)(ix) and otherwise.

76.

In order to obtain a competitive advantage and ultimately stop Vista from purchasing and developing the Subject Property, West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3, made the false statements complained of herein.

77.

Those false statements occurred during the Planning Commission meeting when West Shore Walden reported that "we do not object at this time." Other false statements were made in West Shore Walden's October 28, 2021 letter and its December 9, 2021 Petition for Writ. These false statements were made for the purpose of falsefully presenting to the City of Savannah that there was a legitimate zoning concern.

78.

West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3, made misrepresentations to the City of Savannah which caused an intentional suspension of Vista's purchase and development of the Subject Property.

79.

The unlawful conduct resulted in pecuniary and other gain to Defendants and caused harm to Vista.

**B. Mail Fraud (18 U.S.C. § 1341).**

80.

West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3, engaged in mail fraud, in violation of 18 U.S.C. § 1341. Mail fraud constitutes racketeering activity under O.C.G.A. § 16-14-3(9)(A)(xxix), which incorporates conduct defined by federal RICO, specifically 18 U.S.C. § 1961(1)(A), as acts of racketeering activity.

81.

Having devised a scheme to defraud, and for the purpose of wrongfully obtaining valuable property by means of false or fraudulent pretenses, representations, or promises, West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3, deposited or electronically transmitted letters for the purpose of executing that scheme.

82.

West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3, also had a scheme or artifice to defraud Vista by making

misrepresentations to the City of Savannah with the expectation that it (the City of Savannah) would rely upon and act thereon, all to the detriment of Vista in condemnation of Vista's valuable property – the ability to develop the Subject Property.

83.

On October 28, 2021, West Shore Walden, through its attorney wrote a letter to the City of Savannah opposing Vista's rezoning petition. West Shore Walden argued in short that the City of Savannah did not have sufficient information to approve Vista's petition and approving such petition without that information would be "a manifest abuse of the zoning power by the City…."

84.

West Shore Walden submitted the October 28, 2021 letter to the City of Savannah by depositing said letter or electronically transmitting said letter to the City of Savannah in furtherance of its scheme to defraud Vista.

85.

The unlawful conduct resulted in pecuniary and other gain to Defendants and caused harm to Vista.

86.

West Shore Walden, West Shore, and the John Doe Defendants acted willfully and with an intent to defraud and to wrongfully obtain the Property from Plaintiffs.

**C. Relationship Between The Predicate Acts Of Racketeering Activity**

87.

The acts of racketeering activity committed by Defendants have the same or similar intents, in that they sought to induce and entice the City of Savannah to use its power to cause Vista to surrender the ability to purchase and develop the Subject Property.

88.

The acts of racketeering activity committed by Defendants have the same or similar methods of commission in that they involve making false statements within a government agency and mail fraud committed in furtherance of a scheme to defraud Vista out of valuable property.

89.

Vista has been injured by reason of Defendants' violation of O.C.G.A. § 16-14-4(a), and are entitled to: 1) equitable relief in the form of an Order directing that Defendants must stop any further action against the Subject Property; and 2) recover from the Defendants three times the actual monetary damages sustained.

90.

In addition, Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care that raises the presumption of conscious indifference to consequences and specific intent to cause harm, entitling Vista to receive from Defendants punitive damages sufficient to deter, penalize, or punish them in light of the circumstances of the case.

91.

Vista is aggrieved within the meaning of O.C.G.A. § 16-14-6(b) and appraised for the issuance of appropriate orders and judgments, including, but not limited to, reasonable restrictions upon the future activities of Defendants.

92.

Pursuant to O.C.G.A. § 16-14-6(c), Vista is entitled to recover its attorneys' fees in the trial and appellate courts, and costs of investigation and litigation reasonably incurred.

## COUNT III
## Conspiring and Endeavoring to Violate Georgia RICO

93.

Vista hereby incorporates by reference each paragraph above as if fully set forth herein.

94.

Defendants conspired to violate O.C.G.A. § 16-14-4(a), specifically, to obtain or wrongfully retain personal property, including money, through a pattern of racketeering activity.

95.

Defendants agreed to participate in and did in fact participate in a conspiracy and endeavor to violate O.C.G.A. § 16-14-4(a) by defrauding Vista out of valuable property, including money, directly and indirectly from Vista through a pattern of racketeering activity, in violation of O.C.G.A. § 16-14-4(a).

96.

The pattern of racketeering activity contemplated by, and committed pursuant to, the conspiracy and endeavor included the acts of racketeering activity alleged above.

97.

Vista has been injured by reason of Defendants' violation of O.C.G.A. § 16-14-4(c), and is entitled to recover three times the actual damages sustained.

98.

In addition, Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care that raises the presumption of

conscious indifference to consequences and specific intent to cause harm, entitling Vista to receive punitive damages sufficient to deter, penalize, or punish them in light of the circumstances of the case.

99.

Vista is aggrieved within the meaning of O.C.G.A. § 16-14-6(b) and appraised for the issuance of appropriate orders and judgments, including, but not limited to, reasonable restrictions upon the future activities of Defendants and such other relief as may be necessary and appropriate.

100.

Pursuant to O.C.G.A. § 16-14-6(c), Vista is entitled to recover its attorneys' fees in the trial and appellate courts, and costs of investigation and litigation reasonably incurred.

## COUNT IV
## Tortious Interference with Contractual Relations, Business Relations, and Potential Business Relations

101.

Vista incorporates by reference each paragraph above as if fully set forth herein.

102.

By tortiously filing its Petition for Writ, West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3, tortiously interfered with Vista's contractual relations, business relations, and potential business relations by filing its Writ without any objective merit, which has caused one or more third parties to discontinue or fail to enter into, a business relationship with Vista.

103.

Defendants' actions were done purposefully and maliciously with the intent to interfere with Vista's business relationship with respect to the Subject Property.

104.

Defendants' tortious interference proximately caused Vista to suffer damages.

105.

Vista is entitled to damages and injunctive relief in light of Defendants' tortious interference.

**COUNT V**
**Fraud**
106.

Vista hereby incorporates by reference each paragraph above as if fully set forth herein.

107.

On December 9, 2021, West Shore Walden filed a Petition for Writ for the purpose of overturning the City of Savannah's rezoning decision of the property.

108.

Vista relied of the truthfulness of West Shore Walden's Petition for Writ, halted all conduct related to the Subject Property, engaged counsel, and took steps to defend itself in the Superior Court of Chatham County.

109.

The Superior Court of Chatham County also relied of the truthfulness of West Shore Walden's Petition for Writ, and the court took steps to ensure proper adjudication of the controversy. As such, the Superior Court of Chatham County set a hearing to review Vista's motions and hear arguments on February 14, 2022.

110.

Vista justifiably relied on the intent of West Shore Walden's Petition for Writ, continued to halt all development activities related to the Subject Property, conferred with counsel on numerous occasions, and ultimately prepared for the February 14, 2022 hearing.

111.

Notwithstanding receiving the January 19, 2022 cease and desist letter which outlined the various reasons why West Shore Walden's Petition for Writ was baseless, West Shore Walden waited until February 12, 2022 to withdraw their Petition for Writ without prejudice. West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3, failed to provide Vista or the Superior Court of Chatham County with adequate reason.

112.

West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3 knew, or should have known, that the facts supporting their Petition for Writ were false when filing. Defendants intentionally waited until the last possible second to withdraw their Petition for Writ.

113.

West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3, never had any intent to continue with its Petition for Writ, but instead intended to defraud Vista out of the opportunity to develop the Subject Property.

114.

Each representation and act by West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3, in filing its Petition for Writ, were knowingly, purposefully, maliciously, wantonly, and intentionally false when made.

115.

Each representation and act by West Shore Walden, acting at the direction of West Shore, LLC and/or John Does 1-3, in filing its Petition for Writ, were in connection with the scheme to defraud Vista of the ability to develop the Subject Property.

116.

Defendants each committed fraud against Vista by knowingly, purposefully, maliciously, wantonly, and intentionally making the false representations and false acts set forth above within this Count.

117.

Vista justifiably relied upon Defendants' false representations and false acts referenced above within this Count and was damaged thereby.

118.

Defendants have acted in bad faith, been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense. OCGA § 13-6-11.

## COUNT VI
## Punitive Damages

119.

Vista hereby incorporates by reference each paragraph above as if fully set forth herein.

120.

Because Defendants' actions constitute willful misconduct, malice, wantonness, oppression, and exhibit an entire want of care which raises the presumption of conscious indifference to consequences, there is no cap on the punitive damages Plaintiffs may recover.

121.

Pursuant to O.C.G.A. § 51-12-5.1, Defendants are liable to Plaintiffs for punitive damages to punish, penalize, and deter the behavior detailed herein in an amount to be proven at trial.

## Count VII
## Attorney's Fees

122.

Vista hereby incorporates by reference each paragraph above as if fully set forth herein.

123.

Vista should be awarded its attorneys' fees and expenses of litigation from Defendants, jointly and severally, pursuant to OCGA § 13-6-11 because Defendants have been stubbornly litigious, have acted in bad faith, and have caused Vista unnecessary trouble and expense.

WHEREFORE, Vista demands that judgment be entered in their favor and against Defendants granting Vista the following relief:

(a) Compensatory damages;

(b) Attorneys' fees, costs, and expenses incurred in bringing this Complaint; and

(c) Such other and additional relief as this Court deems just and proper.

Respectfully submitted this 22nd day of February 2022.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Vista demands trial by jury in this action.

[signature on following page]

Respectfully submitted this, 22nd February, 2022.

**KREVOLIN & HORST, LLC**

/s/ Jessica Cino
Jessica Cino
Georgia Bar No. 577837
Jamil Favors
Georgia Bar No. 549881
*Attorney for Plaintiff*

One Atlantic Center
1201 W. Peachtree Street, NW
Suite 3250
Atlanta, Georgia 30309
(404) 888-9700
cino@khlawfirm.com