# EXHIBIT D

## Case Information

SPCV21-01239-WA | West Shore Walden, LLC vs Mayor and Aldermen of the City of Savannah,Vista Realty Partners, LLC,PHRM Holdings, LLC

| Case Number | Court | Judicial Officer |
|---|---|---|
| SPCV21-01239-WA | WA | Walmsley, Timothy |
| File Date | Case Type | Case Status |
| 12/09/2021 | Appeal - Lower Court - Writ of Certiorari | Open |

## Party

Plaintiff/Petitioner
West Shore Walden, LLC

Address
One International Place - Suite 3900
Boston MA 02110

Active Attorneys
Lead Attorney
Connell, John Patrick
Retained

Defendant/Respondant
Mayor and Aldermen of the City of Savannah

Address
P. O. Box 11211
Savannah GA 31412

Active Attorneys
Pro Se

Defendant/Respondant
Vista Realty Partners, LLC

Address
2964 Peachtree Road - Suite 585
Atlanta GA 30305

Active Attorneys
Pro Se

Defendant/Respondant
PHRM Holdings, LLC

Address
6001 Chatham Center Drive - Suite 120
Savannah GA 31405

Active Attorneys
Pro Se

## Events and Hearings

12/09/2021 Petition -

West Shore v. Savannah - Petition for Certiorari.pdf

Comment
Petition for Writ of Certiorari

12/09/2021 Case - Filing Form

West Shore - Civil Domestic Filing Disposition Form.pdf

12/09/2021 Certification - Under Rule 3.2

West Shore -Certificate Undr Rule 3.2.pdf

12/09/2021 Summons

West Shore - Summons .pdf

## Documents

West Shore v. Savannah - Petition for Certiorari.pdf

West Shore - Civil Domestic Filing Disposition Form.pdf

West Shore -Certificate Undr Rule 3.2.pdf

West Shore - Summons .pdf

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 12/9/2021 12:44 PM
Reviewer: AB

IN THE SUPERIOR COURT OF CHATHAM COUNTY
STATE OF GEORGIA

WEST SHORE WALDEN, LLC

Petitioner,

v.

THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, PHRM HOLDINGS, LLC and VISTA REALTY PARTNERS,

Respondents.

CIVIL ACTION NO. SPCV21-01239-WA

**PETITION FOR WRIT OF CERTIORARI**

**APPEAL OF REZONING TO THE SUPERIOR COURT OF CHATHAM COUNTY**

Notice is hereby given that West Shore Walden, LLC (hereinafter, "West Shore" or "Petitioner"), a Delaware limited liability company, appeals the November 9, 2021 decision of the Mayor and Aldermen of the City of Savannah to rezone 1000 Chatham Center Drive, Savannah, GA, PIN 20739-01013 (the "Subject Property"), from B-C (Community Business) to RMF-2-25 (Residential Multi-Family, 25 Units per Acre).

**JURISDICTION AND VENUE**

1.

West Shore is a foreign limited liability company organized under the laws of the State of Delaware with its principal office address at One International Place, Suite 3900, Boston, MA, 02110. West Shore owns the property commonly known as 100 Walden Lane, Savannah, GA, PIN 20739 01009, which is located on Chatham Center Drive directly across from the Subject Property. West Shore operates the apartment complex known as Walden at Chatham Center at 100 Walden Lane.

2.

PHRM Holdings, LLC (“PHRM”) is a foreign limited liability company, organized under the laws of the State of Delaware, with its principal office address at 6001 Chatham Center Drive, Suite 120, Savannah, GA.

3.

Upon information and belief, Vista Realty Partners, LLC (“Vista”) is a domestic limited liability company, organized under the laws of the State of Georgia, with its principal office address at 2964 Peachtree Road, Suite 585, Atlanta, GA.

4.

Upon information and belief, PHRM authorized Vista to act as its agent for the purpose of applying for and obtaining the rezoning of the Subject Property.

5.

The Mayor and Aldermen of the City of Savannah (hereinafter referred to as the “City Council”) is a municipal organization organized and existing under the laws of the State of Georgia.

6.

This Court has subject matter jurisdiction pursuant to Ga. Const. Art. VI, Sec. I, Para. IV and O.C.G.A. § 5-4-3.

7.

Chatham County is the proper venue for this action pursuant to O.C.G.A. § 14-2-510.

8.

The Subject Property consists of approximately 15.75 acres of land located in Savannah, Georgia.

9.

The Subject Property was zoned B-C – Community Business ("BC Zone") pursuant to the City of Savannah's adoption of a City-wide rezoning plan in September of 2019 ("NewZO").

10.

The Subject Property's Future Land Use designation is Commercial Suburban.

11.

Vista desires to develop a multi-family residential apartment complex with a density of twenty-five (25) units per acre on the Subject Property.

12.

Stand-alone apartment complexes of the type Vista desires to develop are not permitted within the BC Zone.

13.

Stand-alone apartment complexes of the type Vista desires to develop are not compatible with the Commercial Suburban future land use designation.

14.

The BC Zone allows for the development of multi-family units, but only on upper floors of developments that feature certain non-residential, commercial uses on the ground floor. Upon information and belief, this restriction upon the development of multi-

family units in the BC Zone was specifically and intentionally enacted by the City Council to encourage “mixed-use” developments in the BC Zone and on the Subject Property, in keeping with the goals and design principals pronounced in NewZO and the Commercial Suburban future land use designation.

15.

Upon information and belief, the City Council intended to exclude stand-alone apartment complexes of the type and density desired by Vista from the BC Zone and the subject property when it adopted NewZO.

16.

Vista applied to rezone the subject property from the BC Zone to the RMF-2-25 Zone so that it could develop a stand-alone apartment complex with a density of twenty-five (25) units per acre on the Subject Property.

17.

In its consideration of Vista’s rezoning request, the City Council failed to follow its own zoning procedures, ignored mandatory zoning requirements and the Subject Property’s future land use designation, and deprived themselves of key information relating to Vista’s proposed development of the Subject Property.

18.

NewZO requires the City Council to consider the following for all rezoning (Map Amendment) requests like Vista’s:

**3.5.8 Review Standards for Rezoning Applications**

Following are the standards which govern the exercise of zoning power by the City.

**a. Suitability and Community Need**

i. Whether the range of uses permitted by the proposed zoning district is more suitable than the range of uses that is permitted by the current zoning district.

ii. Whether the proposed zoning district addresses a specific need in the county or city.

**b. Compatibility**

i. Whether the zoning proposal will adversely affect the existing use or usability of adjacent or nearby property;

ii. Whether the zoning proposal is compatible with the present zoning pattern and conforming uses of nearby property and the character of the surrounding area.

iii. Whether there are other existing or changing conditions affecting the use and development of the property which give supporting grounds for either approval or disapproval of the zoning proposal.

**c. Consistency**

Whether the zoning proposal is in conformity with the policy and intent of the Comprehensive Plan and other adopted plans, such as a redevelopment plan or small area plan.

**d. Reasonable Use**

Whether the property to be affected by the zoning proposal has a reasonable use as currently zoned.

**e. Adequate Public Services**

Whether adequate school, public safety and emergency facilities, road, ingress and egress, parks, wastewater treatment, water supply and stormwater drainage facilities are available for the uses and densities that are permitted in the proposed zoning district.

19.

In construing Vista's application for the rezoning of the Subject Property, the City Council failed to consider subsections a.i., b.i., b.iii., c., d., and e., above.

20.

Moreover, the City Council failed to comply with the notice requirements set forth in NewZO, Section 3.2.3 as follows: the published notice did not include the size of the Subject Property rounded to the nearest on-hundredth, as required by subsection (f); and the information posted online for public review of the project was incorrect, the notice failed to identify the name and address of the planning commission, and the notice failed to inform the public that the materials related to the application were available for public inspection at that location during normal business hours, all in violation of subsection (h).

21.

As the property owner operating a multi-family apartment complex directly across the street from the Subject Property, Petitioner has a substantial interest in the rezoning of the Subject Property, and it will suffer substantial damage by reason of the City Council's decision to rezone the Subject Property without following its own zoning procedures and due process requirements.

22.

The damage Petitioner will suffer is a special damage not common to all property owners similarly situated because Petitioner's apartment complex is located directly across Chatham Parkway from the Subject Property, and the City Council's failure to ensure that adequate public facilities exist to service Petitioner's residents in addition to the hundreds of new residents allowed under the RMF-2-25 zoning will result in a diminution of value to Petitioner's property and its ongoing business concerns.

23.

By way of specific example, the City Council failed to determine that the existing streets and intersections, with the addition of traffic from Vista's proposed 25 unit-per-acre apartment complex, can accommodate the new traffic flow, and whether Petitioner's property value, rate of rental, use and useability will be negatively impacted thereby.

24.

Additionally, City Council failed to inquire into the proposed plan for ingress and egress for the proposed 25 unit-per-acre development, situated directly across Chatham Center Drive from Petitioner's property, and whether Petitioner's ingress and egress, and ultimately, its property value, rate of rental, use and useability will be negatively impacted thereby.

25.

Petitioner notified the City Council of its specific objections to the rezoning and the specific basis for same in writing prior to the City Council first considering Vista's Request. See Petitioner's Letter to the City Council, attached hereto as Exhibit A.

26.

Exhibit A is hereby incorporated herein as if fully set forth and pled in its entirety.

27.

Petitioner appeared at the October 28, 2021, City Council meeting where the City initially entertained Vista's rezoning request. Petitioner presented Exhibit A at that meeting and notified Council of its concerns regarding the lack of information about the

proposed project and the detrimental effects the requested rezoning would have on Petitioner's property.

28.

City Council voted to continue the rezoning hearing from October 28th to November 9, 2021 so that Vista and its agents could provide additional information about the project.

29.

However, Vista provided no additional information, and Council voted to approve the rezoning request with no additional information or comment at its November 9, 2021, meeting, despite Petitioner having informed Council that no additional information had been provided and its objections and concerns remained unanswered.

30.

The City Council's approval of Vista's rezoning application without complying with its own procedures for zoning constitutes a manifest abuse of the rezoning power to the oppression of Petitioner, and a violation of Petitioner's Constitutional rights, for the reasons set forth herein and in Exhibit A.

WHEREFORE, Petitioner requests the following relief from this Court:

1. Issue a writ of certiorari directed to the Mayor and Aldermen of the City of Savannah commanding it to certify to this Court its entire record in the matter;
2. On a hearing of the matter, issue an order declaring the at-issue rezoning unconstitutional; or
3. Issue an order remanding the rezoning to the City Council and requiring it to follow its own procedures for rezoning; and
4. Award Petitioner such other and further relief as the Court considers just and proper.

Respectfully submitted, this 9th day of December, 2021.

CONNELL, THAW & RUBERTI, LLC

J. Patrick Connell
Georgia Bar Number 353316
*Attorneys for Petitioner*

P.O. Box 8854
Savannah, Georgia 31401
Phone: (912) 675-5496
patrick@ctr-firm.com
emily@ctr-firm.com

# EXHIBIT A

Petitioner's Letter to the City Council



Connell, Thaw & Ruberti, LLC
139 Follins Lane
St. Simons Island, Georgia 31522
P.O. Box 8854
Savannah, Georgia, 31401

J. Patrick Connell, Esq.
P.O. Box 8854
Savannah, Georgia 31401
(912) 675-5496
Patrick@ctr-firm.com

October 28, 2021

VIA E-Mail

Re: ***West Shore Walden, LLC's Opposition to Application to Amend the Zoning Map for 1000 Chatham Center Drive***
*Savannah City Council Regular Meeting* - October 28, 2021
*Agenda Items 9 & 12*

Dear Mayor and Aldermen:

On behalf of my client West Shore Walden, LLC, owner of The Walden at Chatham Center ("The Walden"), I write to oppose Petitioner's request to rezone 15.75 acres of the 33.95-acre parcel known as 1000 Chatham Center Drive (PIN: 20739-01013) from B-C (Community Business) to RMF-2-25 (Multifamily residential – 25 dwellings per acre). The opposition to the requested rezoning arises from the following:

1) lack of detail regarding the impact a 375+ unit development will have on the surrounding community, The Walden's residents, and its owners, including potentially adverse impacts on traffic patterns and flow, ingress and egress to the Walden, and stacking at the nearby intersections of Chatham Parkway with Chatham Center Drive and I-16;

2) lack of specificity concerning the layout of the development, its ingress and egress, and the projected number of residents/bedrooms per unit;

3) incompatibility of a density of 25 multi-family units per acre with the three existing apartment complexes located off of Chatham Parkway between I-16 and Ogeechee Road, all of which have a density of 15 units per acre;

4) the potential for diminution in value of West Shore's property as the result of the construction of a higher density multi-family apartment complex of unknown quality and actual density, and the resultant increase in traffic and use of other public service therefrom, adjacent to West Shore's property; and

5) the subversion of the zoning ordinance's preference for true mixed-use development in the B-C zone at this location, as evinced by Petitioner's

request to rezone the parcel to allow the construction of a stand-alone apartment complex instead of constructing a mixed-use commercial project with residential units in the upper floors (permitted as of right within the revised B-C zone adopted with NewZO in 2019), while Petitioner simultaneously plans to develop approximately 7.5 acres of commercial property along Chatham Parkway and another 5+ acres designated as "Parcel A" just north of 1000 Chatham Center Drive for an unknown purpose.

Section 2.2.2 of the City of Savannah's Zoning Ordinance (Effective September 1, 2019) provides that the Mayor and Aldermen shall be responsible for final action regarding zoning text and map amendments. The Mayor and Aldermen crafted the B-C zoning requirements of NewZO with the specific purposes announced in Section 1.1.4 thereof. The determination of what uses would be allowed in the new B-C zone were intentional and followed many years of thorough study and planning by the City and its designees.

The City determined with intent that the new B-C zone would not permit stand-alone multi-family apartment complexes as of right, but the zone would encourage "smart growth", mixed use development by allowing residences to be constructed above businesses up to a height of 75 feet. The City also determined that the largely undeveloped parcel known as 1000 Chatham Center Drive would be in the new B-C zone and therefore should be developed in accordance with its requirements.

Petitioner now asks the City to pronounce its determinations regarding the intended character of the B-C zone as applied to the at-issue property as insufficient and proposes a stand-alone multifamily apartment complex with a density higher than any development in the vicinity, without providing any detail about what the development will look like and how it will impact neighboring property owners like The Walden.

The City applies the following standards of Section 3.5.8 of the Zoning Ordinance when reviewing rezoning applications:

**3.5.8 Review Standards for Rezoning Applications**

Following are the standards which govern the exercise of zoning power by the City.

a. **Suitability and Community Need**
   i. Whether the range of uses permitted by the proposed zoning district is more suitable than the range of uses that is permitted by the current zoning district.
   ii. Whether the proposed zoning district addresses a specific need in the county or city.

b. **Compatibility**
   i. Whether the zoning proposal will adversely affect the existing use or usability of adjacent or nearby property;
   ii. Whether the zoning proposal is compatible with the present zoning pattern and conforming uses of nearby property and the character of the surrounding area.



iii. Whether there are other existing or changing conditions affecting the use and development of the property which give supporting grounds for either approval or disapproval of the zoning proposal.

c. **Consistency**

Whether the zoning proposal is in conformity with the policy and intent of the Comprehensive Plan and other adopted plans, such as a redevelopment plan or small area plan.

d. **Reasonable Use**

Whether the property to be affected by the zoning proposal has a reasonable use as currently zoned.

e. **Adequate Public Services**

Whether adequate school, public safety and emergency facilities, road, ingress and egress, parks, wastewater treatment, water supply and stormwater drainage facilities are available for the uses and densities that are permitted in the proposed zoning district.

f. **Proximity to a Military Base, Installation or Airport**

In accordance with the O.C.G.A. §36-66-6, when a rezoning is proposed for property located within 3,000 feet of a military base, installation or airport, or within the 3,000 foot Clear Zone and Accident Prevention Zones Numbers I and II as prescribed in the definition of an Air Installation Compatible Use Zone that is affiliated with such base, installation or airport the following shall occur:

i. The commander of such military base, installation or airport, including Hunter Army Airfield, shall be requested to provide a written recommendation and supporting facts at least 30 days prior to the public hearing.

ii. If there is no response from the commander, there shall be a presumption that the proposed rezoning will not have any adverse effect relative to the standards listed below and the Planning Director shall make such investigation and recommendation with respect to the standards listed below.

1. Whether the zoning proposal will permit a use that is suitable in view of the use of adjacent or nearby property within 3,000 feet of a military base, installation or airport;
2. Whether the zoning proposal will adversely affect the existing use or usability of nearby property within 3,000 feet of a military base, installation or airport;
3. Whether the property to be affected by the zoning proposal has a reasonable economic use as currently zoned;
4. Whether the zoning proposal will result in a use which will or could cause a safety concern with respect to excessive or burdensome use of existing streets, transportation facilities, utilities, or schools due to the use of nearby property such as a military base, installation or airport;
5. Whether the zoning proposal is in conformity with the policy and intent of the adopted land use plan (i.e., the Comprehensive Plan); and,



6. Whether there are existing or changing conditions affecting the use of the nearby property such as a military base, installation or airport, which give supporting grounds for either approval or disapproval of the zoning proposal.

Here, the City must make the following determinations in response to the Petitioner's request, among others:

- Whether the range of uses permitted by the RMF-2-25 zone is more suitable than the range of uses permitted by the B-C zone;
- Whether a density of 25 units per acre (375+ units) will affect the existing use or useability of adjacent or nearby properties, including the impact on traffic flows, stacking, etc.;
- Whether there are other existing or changing conditions affecting the use and development of the property, including the impact a 375+ unit development will have on traffic patterns and other conditions when viewed in conjunction with the commercial development proposed along Chatham Parkway and the development of Parcel A for unknown purpose;
- Whether the parcel has a reasonable use under the current B-C zoning;
- Whether there are adequate schools, public safety and emergency facilities, road, ingress and egress, parks wastewater treatment, water supply, and stormwater management drainage facilities to support a 375+ apartment complex of unknown bedroom number, in addition to the existing properties AND the proposed development of the commercial property along Chatham Parkway and Parcel A.

The record before the City does not presently contain enough information to make a determination as to any of these important standards. At a minimum, the following information is needed to perform the required analysis:

- the number of individuals of driving age expected to reside at the complex;
- the locations of ingress and egress of the proposed complex; and
- the ability of existing public services, including roadways, intersections, schools, public safety, emergency facilities, parks, wastewater treatment, water supply and stormwater management to service the unknown number of residents and the additional commercial development proposed on the parcel.

Additionally, under Section 3.5.8, the City must analyze whether the Petitioner's desire to build a high-density, stand-alone apartment complex should overturn its determination that this parcel would not be a stand-alone, multi-family development, but instead could be a mixed-use development with residential above commercial uses. Is the developer's requested use more suitable than the City's proscribed uses? Are the City's proscribed uses reasonable?

The rezoning of this property from B-C to RMF-2-25 without gathering sufficient information to answer the above questions in the affirmative would be a manifest abuse



of the zoning power by the City and it would violate the provisions of the City's Zoning Ordinance regarding substance and procedure. Such a rezoning would be contrary to the City's interests in its citizens' health, safety and welfare. It would violate the Constitutional protections of Art. I, Sec. I, Para. I and Art. I, Sec. III, Para. I of the State of Georgia, and the Due Process Clause of the Fourteenth Amendment and the Just Compensation Clause of the Fifth Amendment of the United States Constitution, as enjoyed by the citizens who reside at The Walden, its owners, and similarly situated citizens who live and work nearby. It would be an illegal spot zoning, made arbitrarily and capriciously. As such, the Petition should be denied.

This notice is being given to comply with the provisions of O.C.G.A. 32-33-5.

Yours very truly,

J. Patrick Connell, Esq.
For the Firm

