## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

VISTA ACQUISITIONS, LLC,

     **Plaintiff,**

v.

WEST SHORE WALDEN LLC;
WEST SHORE, LLC; John Doe 1;
John Doe 2; and John Doe 3,

     **Defendants.**

**CIVIL ACTION FILE
NO. 1:22-cv-00739-MLB**

## WEST SHORE WALDEN LLC's AND WEST SHORE, LLC's MOTION TO DISMISS VISTA ACQUISITIONS, LLC'S CLAIMS

Defendants West Shore Walden LLC ("Walden") and West Shore, LLC ("West Shore") move to dismiss Plaintiff Vista Acquisitions, LLC ("Vista")'s Complaint.

### I.  Background

This local zoning dispute—now featuring frivolous allegations of criminal misconduct—is a case study in how litigants abuse the federal RICO statute. On August 23, 2021, Vista applied to the Savannah Metropolitan Planning Commission ("MPC") to rezone 1000 Chatham Center Drive, Savannah, Georgia,

31405 ("the Property"), intending to later buy the Property. Dkt.1-1.[1] But Vista's application, which required it to provide substantive information about its proposed residential project, was shockingly light on detail. For example, the application required Vista to describe and explain "[w]hether adequate school, public safety and emergency facilities, road, ingress and egress, parks, wastewater treatment, water supply and stormwater drainage facilities are available for the uses and densities that are permitted in the proposed zoning district." Dkt. 1-1 at 4. Rather than describe or explain anything, Vista simply responded: "Yes." *Id.* Likewise, Vista failed to present information about the total number of residents, their income levels or ages, anticipated traffic flows, or how residents would use public services. *See generally* Dkt. 1-1.

Notwithstanding the lack of information, the MPC approved Vista's rezoning request after a public meeting on September 21, 2021.[2] Dkt. 1 ¶¶ 27–28. Deprived of meaningful information about Vista's proposal, Walden's outside zoning counsel, Mr. J. Patrick Connell, sent a letter to the Savannah City Council

---

[1] A district court "may always consider exhibits attached to the complaint on a 12(b)(6) motion, because exhibits are part of the pleadings." *Basson v. Mortg. Elec. Reg. Sys., Inc*., 741 F. App'x 770, 771 (11th Cir. 2018) (citing Fed. R. Civ. P. 10(c)).

[2] The MPC's "Staff Report," attached to Vista's Complaint as Exhibit B, offers no further detail but instead repeats the scant information in Vista's application. Dkt. 1–2.

("the City") on October 28, 2021, stating Walden's legal position, explaining Walden's opposition to the rezoning, and specifically identifying as concerns Vista's lack of detail and specificity regarding, *inter alia*, the availability of public services for future residents. Dkt. 1-3 at 5.

The City nevertheless approved Vista's petition for rezoning on November 9, 2021. Dkt. 1 ¶ 32. Still having received no meaningful information about Vista's plans for the Property, Walden filed a Petition for Writ of Certiorari ("the Petition"), as authorized by O.C.G.A. § 5-4-6(a), in the Superior Court of Chatham County on December 9, 2021. Dkt. 1-4. Walden argued that, given the dearth of information in Vista's application, the City failed to comply with its own standards for evaluating rezoning applications. *Id.* ¶¶ 18-19. Walden further explained it would suffer substantial damage by virtue of the rezoning because, for one, the City "failed to determine that the existing streets and intersections, with the addition of traffic from Vista's proposed 25 unit-per-acre apartment complex, can accommodate the new traffic flow[.]" *Id.* ¶ 23.

In an effort to intimidate Walden into dropping its suit, Vista's counsel threatened—of all things—a federal RICO suit via letter to Walden's outside counsel on January 19, 2022. Dkt. 1-6. To avoid such frivolous litigation and in the

spirit of compromise, Walden dismissed the Petition without prejudice to afford the parties an opportunity to resolve their differences. Dkt. 1-10.

Despite Walden's dismissal of the Petition, and even though Vista obtained a favorable rezoning determination, Vista filed this federal RICO action against Walden and West Shore. But Vista's attempts to transform Walden's routine and constitutionally protected objections to a rezoning decision into a federal RICO claim and various state claims are frivolous and should be rejected.

To begin, <u>all</u> of Vista's claims are barred under the *Noerr-Pennington* doctrine. But even if Walden's conduct was not constitutionally protected, Vista's federal RICO claim fails on the merits. And once the Court dismisses the federal RICO claim, it should dismiss the entire case. Although Vista's state-law claims for Georgia RICO, fraud, tortious interference, punitive damages, and attorney's fees lack merit, the Court need not reach these issues because "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).[3]

---

[3] *See, e.g.*, *Bio-Medical Applications of Ga., Inc. v. City of Dalton, Ga.*, 685 F. Supp. 2d 1321, 1340–41 (N.D. Ga. 2009) (dismissing federal claims and declining

## II.  __The *Noerr-Pennington* doctrine bars all of Vista's claims for relief__

The *Noerr-Pennington* doctrine requires dismissal of Vista's suit. As the bases for its claims, Vista relies on three categories of allegedly false statements: (1) a Walden representative's statement during the MPC hearing that "[w]e are not objecting at this time," Dkt. 1 ¶ 24; (2) Walden's outside counsel's October 28, 2021 letter to the City, *id.* ¶ 30; and (3) the Petition, *id.* ¶ 33. As discussed below, the Complaint does not support Vista's claims of falsity. Even so, each of these statements were made in the context of a public zoning process or litigation and therefore cannot form the basis of liability. Well-established law forbids Vista's attempt to recharacterize these core First Amendment activities as criminal, tortious, or fraudulent.

The *Noerr-Pennington* doctrine, which originated in the antitrust context and is rooted in First Amendment concerns, immunizes from liability "[t]hose who petition government for redress." *Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993). The doctrine expressly protects lobbying activity, advocacy to administrative agencies, and litigation. *See, e.g.*, *id.* at 57; *Andrx Pharms. v. Elan Corp.*, 421 F.3d 1227, 1233 (11th Cir. 2005) ("Subsequent

---

to exercise supplemental jurisdiction over complex state law claims); *Solomon v. Sutton*, No. 1:18-cv-05715, 2020 WL 9601769, at 2 (N.D. Ga. July 1, 2020) (same).

precedent has extended *Noerr-Pennington* immunity to defendants who exercise their right to petition government by resorting to administrative and/or judicial proceedings."); *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 939–40 (9th Cir. 2006) (construing Hobbs Act & RICO statutes to avoid First Amendment/*Noerr-Pennington* conflicts); *White v. Lee*, 227 F.3d. 1214, 1231 (9th Cir. 2000) (applying doctrine in land use case); *Sabal Palm Condos. Ass'n v. Fischer*, No. 12-60691-Civ., 2014 WL 988767, at *22 (S.D. Fla. Mar. 13, 2014) ("Because the immunity under the *Noerr–Pennington* doctrine is based on the First Amendment right to petition—a right that is not limited to petitions involving antitrust issues—and because this right extends to petitions filed in the courts (i.e., lawsuits), this immunity also applies in other contexts.").

Numerous federal courts have applied *Noerr-Pennington* in zoning and land use-related disputes. In *City of Columbia v. Omni Outdoor Advertising*, the U.S. Supreme Court held that a party's petitions to local governments regarding zoning changes were immune from liability. "That a private party's political motives are selfish is irrelevant: *Noerr* shields … a concerted effort to influence public officials regardless of intent or purpose." 499 U.S. 365, 380 (1991) (quotation marks omitted); *see also Empress LLC v. City & City of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005) (dismissal of zoning dispute suit on *Noerr-Pennington*

grounds). Similarly, in the Middle District of Georgia, Judge Sands dismissed a suit alleging tortious interference with the zoning process on *Noerr-Pennington*/First Amendment grounds. *See Howard v. Country Club Estates Homeowners Ass'n*, No. 1:09-cv-37, 2010 WL 11651695, at *4–5 (M.D. Ga. Mar. 29, 2010) (joining other federal courts holding that "the *Noerr-Pennington* doctrine … protect[s] the speech of private individuals who petition local governments to rezone areas or seek to influence legislative action against a specific entity."); *see also, e.g.*, *Koerner v. Garden Dist. Ass'n*, No. Civ. A00-2206, 2001 WL 1631337, at *5 (E.D. La. Dec. 18, 2001); *Barnes Found. v. Twp. of Lower Merion*, 927 F. Supp. 874, 876–78 (E.D. Penn. 1996); *Aknin v. Phillips*, 404 F. Supp. 1150, 1153 (S.D.N.Y. 1975).[4]

As even state courts have recognized, "statements during the zoning process constitute protected petitioning activity." *Cheryl Lloyd Humphry Land Inv. Co. v. Resco Prods., Inc*., 858 S.E.2d 795, 800–01 (N.C. 2021) (citations, punctuation omitted); *Willow Grande, LLC v. Cherokee Triangle Ass'n*, No. 2019-CA-000208-MR, 2020 WL 4910127, at *4–7 (Ky. Ct. App. Aug. 21, 2020) (Opinion denoted

---

[4] As Judge Sands observed, "[e]ach of these cases was decided upon a motion to dismiss." *Howard*, 2010 WL 11651695, at *4 n.6.

as Not Final) (holding that *Noerr-Pennington* protects even unsuccessful zoning petitioning and subsequent appeals).

Although there is an exception to this doctrine for "sham litigation," no allegation in the Complaint warrants its application here. Constitutionally protected conduct is not actionable unless it is intentionally false or completely baseless. Indeed, to fall within the sham litigation exception, Vista must prove that Walden's petition activity was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Pro. Real Estate Invs., Inc.*, 508 U.S. at 60. "[T]he existence of probable cause to institute legal proceedings precludes a finding [of] sham litigation .… Probable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Id.* at 63 (quotation marks omitted). Courts "do not lightly conclude in any *Noerr-Pennington* case that the litigation in question is objectively baseless, as doing so would leave that action without the ordinary protections of the First Amendment[.]" *Sabal*, 2014 WL 988767, at *22 (quoting *White*, 227 F.3d at 1232). Even where a party has lost the underlying suit, "a court must resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation." *Pro. Real Estate Invs., Inc.*, 508 U.S. at 60 n.5 (citation

omitted); *see also Trs. of U. of Pa. v. St. Jude Children's Research Hosp.*, 940 F. Supp. 2d 233, 245–46 (E.D. Penn. 2013) (granting motion to dismiss on *Noerr-Pennington* grounds despite allegedly abusive litigation's lack of success).

Here, Vista has affirmatively pled that Walden had an economic interest in ensuring that Vista did not prevail in its attempt to rezone. Dkt. 1 ¶ 36. Vista did not allege, nor could it, that Walden lacked a reasonable belief that any of its claims might be held valid by the Chatham County court. Indeed, the paucity of information in Vista's application along with the City's requirements establishes that Walden had—at minimum—probable cause to seek judicial relief. While the actual answers to the substantive questions posed by the City's rezoning requirements are not certain, what is demonstrably clear from the face of the rezoning application attached to the Complaint is that neither Vista nor the MPC made any real effort to answer those questions, or to account for how the potentially 1000+ person development across the street from Walden's existing complex would affect Walden's property.

In addition to lacking sufficient information, as discussed above, Vista's rezoning application was also rife with inconsistencies. For example, Exhibit B to Vista's application was what Vista labelled a "Concept Plan" and, while it is hard to read, it appears to suggest that Vista was trying to build 300 units. *See* Dkt. 1-1

at 14. But the rezoning itself sought permission to build up to 25 units per acre, which would permit 393 units (of unspecified size) over the 15.75 acre tract, more than 25% more than what Vista purported to want, at an allowed density that would be 40% more than three nearby multi-family residential tracts (which were zoned for 15 units per acre). *See* Dkt. 1-1. Walden's interests thus would unquestionably have benefitted from the petitioned-for governmental action, *i.e.*, denial or modification of the rezoning request, and its objections were not objectively baseless, even if the political entity that is the City Council of the City of Savannah ultimately chose to disregard them.

Vista's allegations of bad motive do not remove *Noerr-Pennington* protection. "[A]n objectively reasonable effort to litigate cannot be sham regardless of subjective intent." *Pro. Real Estate Invs., Inc.*, 508 U.S. at 57. Even if, as alleged, Walden sought to delay the rezoning in addition to reversing the City's decision, "the purpose of delaying a competitor's entry into the market does not render lobbying activity a 'sham,' unless … the delay is sought to be achieved only by the lobbying process itself, and not by the governmental action that the lobbying seeks." *City of Columbia*, 499 U.S. at 381. But as alleged, Walden did not send the letter or file the Petition for the sole purpose of delay—Walden had an obvious economic interest in the City's reconsideration of its rezoning decision.

The sham litigation exception does not apply where a defendant "intended to ... influence the governmental action." *Howard*, 2010 WL 11651695, at *5. Thus, even accepting Vista's allegations as true, *Noerr-Pennington* immunity applies to and bars all claims.

### III.    The federal RICO claim should be dismissed

Vista has failed to properly allege the elements of a federal RICO claim. In this Circuit, "[a] private plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).

#### 1.  Vista fails to meet the heightened pleading standards required for fraud and RICO allegations.

As a preliminary matter, claims for fraud and "substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Rule 9(b) requires: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and

manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007) ("RICO claims … are essentially a certain breed of fraud claims.").

To begin, Vista's complaint is devoid of any specificity as to a statement that could constitute a misrepresentation. "Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc*., 287 F. App'x 81, 86 (11th Cir. 2008). The essence of Vista's fraud claim is that Walden made "claims and allegations ... not supported by the material facts" in the Petition. Dkt. 1 ¶¶ 34, 77, 107. Vista offers two alleged representations by way of example: Walden's claims that (1) the City Council "failed to 'follow its own zoning procedures'"; and (2) it "'will suffer substantial damage'" due to the Property's rezoning. *Id.* ¶¶ 35–36. But "[a] false representation must relate to an existing or pre-existing fact." *Tri-State Consumer Ins. Co., v. LexisNexis Risk Sols., Inc*., 823 F. Supp. 2d 1306, 1319 (N.D. Ga. 2011) (citation omitted). "[G]eneral commendations or mere expressions of opinion, hope, expectation and the like" are not misrepresentations of pre-existing facts. *Id.* And an alleged "misrepresentation as to a matter of law is a statement of

opinion only." *Lakeside Invs. Grp., Inc. v. Allen*, 253 Ga. App. 448, 450 (2002) (citations omitted). Neither Walden's legal opinion as to the adequacy of the City's adherence to its procedures or claims about its own potential damages constitute actionable misrepresentations of pre-existing facts.[5]

Nor do Vista's allegations provide any "basis in fact upon which the Court could conclude that any specific act of any specific Defendants is indictable for mail [fraud]." *Brooks v. Blue Cross & Blue Shield of Fla*., 116 F.3d 1364, 1381 (11th Cir. 1997). Pursuant to 18 U.S.C. § 1341, mail fraud requires use of the "Postal Service" or "any private or commercial interstate carrier." Notably absent from the Complaint, however, is any allegation that any Defendant used the mail— indeed, Vista alleges that Walden "deposited or electronically transmitted letters for the purpose of executing that scheme." Dkt. 1. ¶ 81. But alleging that Walden "deposited" letters is not sufficient, particularly given that Vista's Exhibit C states that Mr. Connell's letter was sent via email. Dkt. 1–3.

Vista further flouts Rule 9(b) by failing to "inform each defendant of the scope of his or her participation in the alleged fraud" and RICO conduct. *Ambrosia*, 482 F.3d at 1317 (citation omitted). To be sure, Vista alleges Walden

---

[5] For the same reasons, these representations (also made in the October 28, 2021 letter) do not constitute racketeering activity under Georgia law.

acted "at the direction of West Shore, LLC and/or John Does 1–3." Dkt. 1 ¶¶ 76, 114. But the Complaint leaves the reader to guess what "at the direction of" entails. Aside from seemingly related names, Vista does not allege a single fact showing the relationship between or the structure of these entities. In the absence of any plausible facts supporting Plaintiff's theory of West Shore's directorial role, this allegation impermissibly "lump[s] together all of the defendants." *Ambrosia*, 482 F.3d at 1317.

Emblematic of its inability to plead its claims with specificity, Vista also asserts claims against "John Doe" Defendants, who are "unknown individuals or entities who, upon information and belief, were involved in West Shore Walden's scheme." Dkt. 1 ¶ 4. "As a general matter, fictitious-party pleading is not permitted in federal court" unless "the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citation omitted). Vista's description of the John Does "does not necessarily pick out one" individual, as required to meet the exception. *Smith v. Comcast Corp.*, 786 F. App'x 935, 940 (11th Cir. 2019). Vista cannot satisfy Rule 9(b) by "assert[ing] that an unnamed and unidentified individual" *may* have made false representations or directed another to engage in fraudulent conduct. *United*

*States ex rel. Lewis v. Walker*, No. 3:06-cv-16(CDL), 2007 WL 2713018, at *8 n.10 (M.D. Ga. 2007).

In sum, Vista has wholly failed to state "with particularity the specific situation involved, i.e., who, what, when, where, and how." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 198 F.R.D. 560, 562 (N.D. Ga. 2000). Because Vista failed to plead its fraud and civil RICO claims with particularity, those claims must be dismissed. And for the reasons discussed below, leave to amend would be futile.

**2.** **The Complaint fails to properly allege a "pattern" of racketeering activity as required by the federal RICO statute.**

Even if the Court accepts Vista's hyperbolic and unsupported allegations that attorney letters and pleadings challenging a zoning decision constitute criminal mail fraud, Vista has failed to properly plead that Defendants engaged in a "pattern of racketeering activity." Proving a pattern means proving "at least two acts of racketeering activity." 18 U.S.C. § 1961(5) (emphasis added); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985) ("[W]hile two acts are necessary, they may not be sufficient[.]").

But pleading two acts of racketeering doesn't show a pattern; a plaintiff must "plausibly allege that the defendant is engaged in criminal conduct of a continuing nature." *Cisneros*, 972 F.3d at 1216 (emphasis added) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004)). This needs a

"series of related predicate[] [acts] extending over a <u>substantial period of time</u>" or illegal acts that have "the threat of <u>continuity</u>." *Id.* (citations omitted) (emphasis added).

As a threshold matter, Vista hasn't properly pled the numerical requirement for showing a pattern of racketeering activity—*i.e.*, two predicate acts. Neither the federal RICO count (Count 1) nor the allegations preceding that count identify a single predicate act. First, a violation of O.C.G.A. § 16-10-20, *see* Dkt. 1 ¶ 75, isn't a federal act of racketeering, *see* 18 U.S.C. § 1961(1). So that doesn't count towards two required acts of racketeering. Second, the mail fraud allegations, *see* Dkt. 1 ¶ 80, can't satisfy the pattern requirement. Where a plaintiff alleges a mail fraud scheme as a predicate act, it doesn't get to add up every use of the mails to create a "pattern." *Cf. Cisneros*, 972 F.3d at 1216. And, as discussed, Vista has not even properly alleged use of the mails.

Here, the Complaint characterizes all the conduct relating to the Savannah rezoning petition as part of a single scheme, affecting a single victim, in a single geographic area.[6] So even if Vista had properly pled the mail fraud allegation, it has failed to plead a "pattern of racketeering" activity comprised of mail fraud. After all, even "independently chargeable instances of mail or wire fraud cannot

---

[6] *See, e.g.*, Dkt. 1 ¶¶ 4, 42, 57, 58, 82.

constitute a pattern of racketeering activity when they arise from a single transaction." *Id.* (citation omitted).

What's more, Vista doesn't even allege multiple mailings with any particularity. Rather, Vista alleges that the submission of a <u>single</u> letter by an attorney (apparently <u>via email</u>) on October 28, 2021 constitutes an act of mail fraud. *See, e.g.*, Dkt. 1. ¶¶ 80–84. Because Vista fails to properly plead two acts of racketeering, the federal RICO count must be dismissed.

And even if the Complaint properly pled the commission of two predicate acts, it would still fail to meet the "continuity" requirement for showing a pattern. First, the alleged racketeering didn't take place over a "substantial period of time." *See, e,g.*, *Cisneros*, 972 F.3d at 1216 ("We measure a 'substantial period of time' in years, not in weeks."). Even implausibly giving Vista the benefit of the entire time period, from the date on which the MPC met (September 21, 2021) through the date on which Walden dismissed the Petition (February 12, 2022),[7] only yields **<u>five months'</u>** worth of alleged racketeering activity. That's insufficient. *See Jackson*, 372 F.3d at 1266 ("Other circuits have agreed that the substantial period of time requirement for establishing closed-ended continuity cannot be met with allegations of schemes lasting less than a year."); *id.* at 1267 ("The overwhelming

---

[7] *See, e.g.*, Dkt. 1 ¶¶ 4, 42, 57, 58.

weight of case authority suggests that nine months is not an adequately substantial period of time."); *cf. Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc*., 187 F.3d 229, 242 (2d Cir. 1999) ("Since the Supreme Court decided *H.J., Inc*., this Court has never held a period of less than two years to constitute a 'substantial period of time.'").

Likewise, Vista cannot show open-ended continuity. That is, Vista has failed to plausibly allege that the criminal acts "pose a threat of continued criminal activity in the future" or that the criminal conduct was Defendants' "regular way of doing business." *Jackson*, 372 F.3d at 1268. The Complaint affirmatively alleges that the City has already rezoned the relevant property, Dkt. 1 ¶ 32, and that Vista dismissed the Petition, *id*. ¶ 44. Vista's only attempt to plead the possibility of future harm is the speculation that Walden will file another lawsuit, *i.e.*, "renew [its] Petition for Writ of Certiorari." *Id*. ¶ 45. But, as explained below, because merely filing lawsuits—even frivolous lawsuits—cannot constitute an "act of racketeering activity," the mere *possibility* of a future suit cannot show continuity.

As a final note, there is no allegation of <u>any</u> affirmative conduct by West Shore. West Shore's name is not on any legal pleading, and there is no indication that the October 28, 2021 letter was sent on its behalf. Indeed, the only allegation

against West Shore is the conclusory claim that it "directed" Walden.[8] Because Vista has failed to plausibly allege that West Shore engaged in <u>any</u> racketeering activity, the claims against it must be dismissed.

### 3. <u>Vista has failed to plausibly allege that either attorney letters or civil pleadings constitute mail fraud in these circumstances.</u>

Vista's mail fraud allegations, *see* Dkt. 1 ¶¶ 80–86, fail as a matter of law. Vista does not expressly allege that the filing of the Petition (or any alleged false statements in those pleadings) can constitute an act of mail or wire fraud to support a RICO claim. Nor could it. The overwhelming weight of authority rejects such a proposition.[9] To evade this line of authority, Vista alleges that Walden's outside counsel's October 28th letter to the MPC—which stated Walden's legal position regarding the rezoning prior to the litigation—constitutes a mailing in furtherance of a mail fraud scheme. Setting aside the fact that the Complaint fails to properly allege that Mr. Connell's letter was mailed or that it contained a provably false

---

[8] Dkt. 1 ¶¶ 70–71, 74, 76, 78, 80–82, 102, 111–15.

[9] *See, e.g.*, *Winters v. Jones*, No. CV 16-9020, 2018 WL 326518, at *9 (D.N.J. Jan. 8, 2018); *Verify Smart Corp. v. Bank of Am., N.A.*, CV174248JMVJBC, 2019 WL 1594474, at *11 (D.N.J. Apr. 15, 2019); *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 171 (E.D.N.Y. 2010); *McMurtry v. Brasfield*, 654 F. Supp. 1222, 1225 (E.D. Va. 1987); *Snyder v. U.S. Equities Corp.*, No. 12-cv-6092, 2014 WL 317189, at *8 (W.D.N.Y. Jan. 28, 2014); *cf. Speight v. Benedict*, No. 5:05-CV-542, 2007 WL 951492, at *6 n.2 (N.D.N.Y. Mar. 28, 2007); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267–68 (8th Cir. 1984).

statement, ample authority rejects the idea that mailing litigation documents or attorney letters laying out a party's legal position can constitute an act of mail or wire fraud.[10]

### 4. **Vista cannot show that any alleged racketeering activity "proximately caused" its alleged injuries.**

Even if the transmission of the October 28, 2021 letter constituted a single act of mail fraud, Vista cannot show any injury proximately caused by this conduct. By Vista's own admission, the City approved Vista's rezoning petition on November 9, 2021 after Mr. Connell sent his October 28, 2021 letter. Dkt. 1 at 2. The letter itself thus caused no injury whatsoever. Vista's claim is, apparently, that Walden's December 9, 2021 Petition caused its injury. But because Vista does not allege that filing the lawsuit itself constitutes an act of mail fraud, it fails to properly allege any injury proximately caused by an act of racketeering.

---

[10] *Cf. United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) ("A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility."); *see also Nolan v. Galaxy Sci. Corp*., 269 F. Supp. 2d 635, 643 (E.D. Pa. 2003); *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 915 (W.D. Mo. 2010); *Paul S. Mullin & Assocs., Inc. v. Bassett*, 632 F. Supp. 532, 540 (D. Del. 1986); *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 392–93 (S.D.N.Y. 2000), *aff'd sub nom. Kashelkar v. Ruben & Rothman*, 1 F. App'x 7 (2d Cir. 2001); *Morin v. Trupin*, 711 F. Supp. 97, 105 (S.D.N.Y. 1989).

Even so, Vista fails to plead a cognizable injury. Vista's flawed damages theory flows from Defendants' alleged impairment of an intangible property right, *i.e.*, the rights associated with a zoning permit. Dkt. 1 ¶ 67 (alleging Defendants' caused the "taking of Vista's ability to purchase and develop the Subject Land"). But RICO only affords a private right of action to those "injured in [their] business or property by reason of a violation" of the federal RICO statute. 18 U.S.C. § 1964(c). "[T]he phrase 'business or property' ... retains restrictive significance." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). "Congress ... intended to exclude some class of injuries by the phrase 'business or property,'" such as intangible losses. *Id*.; *cf. Cleveland v. United States*, 531 U.S. 12, 15 (2000) ("It does not suffice ... that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim."); *Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352, 1361 (11th Cir. 2011) (requiring an "economic injury" arising from the defendant's actions); *Steele v. Hosp. Corp. of Am*., 36 F.3d 69, 70 (9th Cir. 1994) ("[A] showing of 'injury' requires proof of concrete financial loss, and not mere 'injury to a valuable intangible property interest.'"). Vista fails to identify a concrete economic loss caused by a RICO violation. And to the extent Vista claims monetary damages flowing from any delay caused by the

Petition are cognizable injuries, it has pled those injuries "at only the highest order of abstraction and with only conclusory assertions." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 709 (11th Cir. 2014) (rejecting plaintiffs' claim of antitrust injury for lack of factual specificity).

Still, even had Vista properly alleged an act of racketeering and injury, its RICO claim fails for lack of proximate cause. "[P]leading a civil RICO claim requires that plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity ... was the but-for and proximate cause of the plaintiffs' injuries." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) (emphasis in original). "The connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect." *Id.* Indeed, "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors." *Holmes v. Secs. Inv. Protection Corp.*, 503 U.S. 258, 269 (1992).

Vista's claim for damages is illustrative. Vista apparently asserts that all its damages flow from the filing of the Petition. Other issues with this theory aside, Vista does not allege the Petition reversed or even froze the City's rezoning decision, which was favorable to Vista. Thus, there are "any number of reasons

unconnected to the asserted pattern of fraud" as to why Vista is not realizing the profits it believed it might. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 468 (2006). For one, Vista may not have obtained its construction permits from other entities—the Complaint does not say. And for the Court to calculate damages from, say, the alleged delay in receipt of rental income would require a "complex assessment" beyond that contemplated by the RICO statute. *Id*. at 459. In other words, Vista offers no way for the Court to determine what portion of damages might flow from the alleged racketeering activity as opposed to the downstream decisions of third parties, such as future tenants, banks, subcontractors, and other regulatory entities.

**5.** **The Complaint fails to properly allege Defendants operated or managed a RICO enterprise.**

Although Count 1 purports to allege a violation of 18 U.S.C. § 1962(c), Vista's improper "enterprise" allegations render the count unintelligible. To begin, the Complaint is devoid of any allegations about West Shore's corporate structure, or how it is related to Walden. But assuming the alleged "association-in-fact enterprise" is the combination of West Shore, Walden, and John Does 1–3 (*i.e.*, the corporate enterprise), Vista still fails to state a claim. "To plead an association-in-fact enterprise, … a plaintiff must allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the

enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Cisneros*, 972 F.3d at 1211 (*quoting Boyle v. United States*, 556 U.S. 938, 944 (2009)). But the Complaint doesn't allege that this enterprise meets the elements of an association-in-fact enterprise.[11] This defect alone warrants dismissal.

Even so, to state a civil RICO claim, a plaintiff must establish a distinction between the defendant "person" and the "enterprise" itself. Indeed, "[t]he Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities." *Ray*, 836 F.3d at 1355 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–62 (2001)). Again, Vista fails to allege any facts about Defendants' corporate structure, much less a legally significant distinction between Defendants and the alleged enterprise. This matters because a "defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees when those individuals are operating in their official capacities for the corporation ... to state a civil RICO claim, a plaintiff must

---

[11] A generous reading "at best" alleges "an ambitious business model in which all Defendants aimed to achieve professional success through the acquisition of valuable real estate." *Wade Park Land Holdings, LLC v. Kalikow*, 522 F. Supp. 3d 1341, 1351 (N.D. Ga. 2021).

establish a distinction between the defendant 'person' and the 'enterprise' itself." *Ray*, 836 F.3d at 1355.

The John Doe Defendants do not change the equation. Indeed, the Complaint affirmatively alleges that Defendants "were the agents ... of each other" and were "at all times operating and acting with the purpose and scope" of their employment. Dkt. 1 ¶¶ 5–6. Because Vista fails to explain how either organization, "or any individuals associated with these organizations operated outside their official capacity," there is no meaningful distinction between Defendants and the enterprise.

And, even if the Complaint properly pled the existence of a RICO enterprise, there are no allegations that Defendants "operated or managed" the enterprise, which is an independent basis for dismissal. RICO "liability depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (quotation marks omitted) (emphasis in original). Vista fails to plead a separate enterprise, much less Defendants' participation in the enterprise's affairs as opposed to simply their own.

## IV. The Georgia RICO Counts (Counts 2 and 3) should be dismissed

### 1. The Complaint fails to plausibly allege that Defendants violated O.C.G.A. § 16-14-4(a) (Count II).

"The federal and Georgia racketeering acts are 'essentially identical,' meaning failure to state a claim under the federal act warrants dismissal under the Georgia Act." *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1342 (11th Cir. 2017) (quoting *Simpson*, 744 F.3d at 705 n.2). For the reasons stated above, the Georgia RICO counts should be dismissed.

Additionally, O.C.G.A. § 16-14-4(a) provides that "[i]t shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." Count 2 fails to recite the elements of this statutory language. *See* Dkt. 1 ¶¶ 65–92. Nor are there factual allegations plausibly suggesting that Defendants somehow maintained or acquired an interest in an enterprise through racketeering activity. To the contrary, the Complaint alleges that Defendants tried to sabotage Vista by challenging Vista's rezoning—not that the racketeering activity somehow created or maintained the enterprise. In other words, Vista does not properly allege a Georgia RICO violation.

But even if Vista properly identified an O.C.G.A. § 16-14-4(a) violation, it still cannot show a "pattern" of racketeering activity. As with federal RICO, the Complaint must properly allege "at least two" acts of racketeering. *See, e.g.*, *A.B. v. H.K. Group of Co.*, No. 1:21-cv-1344, 2022 WL 467786, at *4 (N.D. Ga. Feb. 9, 2022) (dismissing Georgia RICO counts). As noted above, the mail fraud allegations fail as a matter of law, and therefore, are insufficient to establish a "pattern."

Likewise, Vista fails to properly allege the other predicate act it refers to, O.C.G.A. § 16-10-20. That statute criminalizes, among other things, "[f]alse statement[s] ... within the jurisdiction of ... state ... or other political subdivision[s]." But the Complaint does not properly allege that any defendant made a false statement. *See* Dkt. 1 ¶¶ 75–79 (alleging violations of O.C.G.A. § 16-10-20). The first allegedly false statement is a Walden representative's September 2021 statement that "we do not object at this time." Dkt. 1 ¶ 77. But the Complaint confirms that Walden presented no objection at that time. Second, the Complaint alleges that Mr. Connell's October 28, 2021 letter was false. However, as discussed, a letter conveying a legal position cannot constitute a false statement. *Cf. Lakeside Invs. Grp.*, 253 Ga. App. at 450.

As a final nail in the coffin, even if Vista had plausibly alleged that Defendants committed acts of racketeering, as with the federal RICO claim, it cannot show that any of the alleged predicate acts proximately caused any harm. *See, e.g.*, *Maddox v. S. Eng'g Co.*, 231 Ga. App. 802, 806 (1998) ("Maddox must show that his injury flowed directly from the defendant's misrepresentations to state agencies, not merely that his injury was an eventual consequence of the misrepresentations or that he would not have been injured but for the misrepresentations.").

### 2. The Georgia RICO conspiracy count should be dismissed (Count III).

To commit Georgia RICO conspiracy, "one must either commit an overt act to 'effect the object of' the endeavor or conspiracy or a co-conspirator must commit such an overt act. *See* O.C.G.A. § 16-14-4(c)(1)–(2)." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 728 (11th Cir. 2021). Because Vista fails to properly plead a substantive Georgia RICO violation, the conspiracy claim, which is predicated on the same conduct, should also be dismissed. *See, e.g.*, *A.B.*, 2022 WL 467786, at *4 ("Because those allegations are insufficient to plausibly allege any RICO violations, the Court will dismiss Plaintiff's RICO conspiracy claims.") (quotation marks omitted) (citing *Red Roof*, 21 F.4th at 728).

Even so, Vista fails to properly allege a conspiracy. For starters, there is no allegation that West Shore committed <u>any</u> overt act other than the vague and imprecise allegation that Walden "act[ed] at the direction of West Shore, LLC and/or John Does 1–3[.]" Dkt. 1 ¶ 78. To the extent that the conspiracy allegations turn on conduct by a John Doe, as discussed, those allegations cannot prevent dismissal. Lastly, Vista has "not plausibly alleged sufficient facts regarding Defendants['] agreement with other entities or persons to engage in the ongoing criminal conduct of an enterprise." *Am. Dental Ass'n*, 605 F.3d at 1296.

## V.  The fraud claim should be dismissed

Under Georgia law, "[t]he tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Bowden v. Med. Ctr., Inc*., 309 Ga. 188, 199 n.10 (2020) (citation omitted). Vista fails to meet Rule 9(b)'s heightened pleading standard. And it cannot state a valid claim for relief for five reasons.

*First,* Vista cannot rely on representations made in the Petition as a basis for a fraud claim. Under Georgia law, "[a]ll charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or

not, are privileged." O.C.G.A. § 51-5-8. While grounded in the context of libel actions, "[t]he privilege is intended for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of ... an action for the recovery of damages." *Williams v. Stepler*, 227 Ga. App. 591, 595 (1997) (cleaned up). Georgia offers, as a counterbalance, "reasonable access to the courts for serious abuses of lawsuit filing through utilization of the carefully developed torts of malicious prosecution ... and abusive litigation[.]" *Phillips v. MacDougald*, 219 Ga. App. 152, 156 (1995). In fact, Georgia's abusive litigation statute, O.C.G.A. § 51-7-85, is the "exclusive remedy for abusive litigation."

*Second*, even if the representations in Walden's Petition were not privileged, as discussed above, Vista fails to explain how they are in any way false. *See supra* § III.1.

*Third*, even if Vista could identify non-privileged misrepresentations, "[a]n essential element of any fraud claim is that defendant knew his representation was false." *First Fin. Sav. & Loan Ass'n v. Title Ins. Co.*, 557 F. Supp. 654, 661 (N.D. Ga. 1982). Vista alleges only that Defendants "knew, or should have known that the facts supporting their Petition for Writ were false when filing." Dkt. 1 ¶ 112;

*see also id.* ¶ 114. But merely alleging scienter in conclusory terms without supplying a factual basis is not sufficient to survive a motion to dismiss.

*Fourth,* Vista failed to show that it justifiably relied on any representations. To begin, Vista alleges that the representations were false but also that it "relied on the truthfulness of [Walden]'s Petition for Writ." *Id.* ¶ 108. Both cannot be true. In any event, under Georgia law, "[a]bsent a fiduciary or confidential relationship with the defendant, the plaintiff must exercise due diligence before relying upon the representations or silence of another." *EduCap, Inc., v. Haggard*, 341 Ga. App. 684, 686 (2017) (citation omitted). Courts do not afford legal relief "when one blindly relie[s] on misrepresentations of the other party as to matters of which he could have informed himself." *Tri-State Consumer Ins. Co.*, 823 F. Supp. 2d at 1320 (internal citation and quotation omitted). Vista does not allege due diligence—to the contrary, it alleges its reliance on the "truthfulness" of the Petition. Dkt. 1 ¶ 108. But Vista has not shown reliance on Defendants' alleged misrepresentations *in* the Petition as opposed to the *filing* of the Petition. *Cf. White v. BDO Seidman*, *LLP*, 249 Ga. App. 668, 670 (2001) (reliance on existence of audits rather than representations in audits not sufficient). The alleged misrepresentations were made to the Superior Court of Chatham County, not Vista. Vista's claim that it reasonably relied upon "bogus allegations" made to the Court

thus strains credulity, even were it not contrary to settled law. Dkt. 1 at 2; *Lakeside Invs. Grp., Inc.*, 253 Ga. App. at 450.

*Fifth*, Vista does not plausibly allege the final element of fraud: damage. Again, Vista provides no factual basis for its claim that it "was damaged" by Defendants' allegedly false representations because it "halted all conduct" related to the Property. Vista does not claim it had to suspend development activities because the Petition was filed—in fact, the City's rezoning decision remains intact and the Petition was dismissed by Walden. And even "a lie, without damage, will not entitle the plaintiff to recover." *Foster v. Sikes*, 202 Ga. 122, 125 (1947).[12]

## VI. <u>Vista's tortious interference claims must be dismissed</u>

Vista's allegation is that "[b]y tortiously filing its Petition for Writ, West Shore Walden … tortiously interfered with Vista's contractual relations, business relations, and potential business relations by filing its Writ without any objective merit, which has caused one or more third parties to discontinue or fail to enter into, a business relationship with Vista." Dkt. 1 ¶ 102.

But as pled, Vista's claims fail as a matter of law. Setting aside the conclusory nature of the alleged causation and injury, West Shore's filing of its

---

[12] Vista's failure to state a claim for fraud is further illustrative of its inability to plead two acts of racketeering.

Petition for Writ is privileged conduct, so cannot be the basis for a tortious interference claim of any type. *See Arclin USA, LLC v. Vits Tech. GmbH*, Case No. 1:20-cv-01197, 2020 WL 10056280 at *4 (N.D. Ga., Nov. 25, 2020).

As here, in *Arclin*, an aggrieved party claimed that Arclin's litigation was "without justification ... and solely with the intent of forcing Vits to breach its contract with [the counterclaim plaintiff]." *Id.* Following well-established Georgia law,[13] this Court dismissed that claim in full, holding that "[a] lawsuit, however, cannot form the basis for a tortious interference claim. … as a matter of law, a claim for tortious interference with contractual relations cannot be predicated upon an allegedly improper filing of a lawsuit." (citations omitted). Accordingly, Vista's claim that it was injured by West Shore's "filing its Petition for Writ" fails as a matter of law. *See* Dkt. 1 ¶ 102.

---

[13] As the Court already knows, ample Georgia authority supports this conclusion. In *Arclin*, this Court cited to *Phillips*, 219 Ga. App. 152 and *Autumn Vista Holdings v. Timbercreek Autumn Vista L.P.*, No. 1:17-cv-03038, 2019 WL 3997147, at *5 (N.D. Ga. Aug. 23, 2019). *See also Williams v. Stepler*, 227 Ga. App. 591, 595 (1997) (describing and applying Georgia's "absolute privilege" regarding litigation documents); *Davis v. Shavers*, 225 Ga. App. 497, 498 (1997) ("our courts have determined that OCGA § 51-5-8 confers an absolute privilege for statements made in judicial pleadings. Absolute privilege means that there can never be any damages for such allegations.") (citation omitted); O.C.G.A. § 51-5-8.

### VII.  There is no basis for punitive damages or attorney's fees

Because Vista fails to state a claim, its derivative claims for punitive damages and attorney's fees must be dismissed. *Gilmour v. Am. Nat'l Red Cross*, 385 F.3d 1318, 1324 (11th Cir. 2004); *Lilliston v. Regions Bank*, 288 Ga. App. 241, 246 (2007).

## CONCLUSION

The Defendants respectfully request that the Court dismiss the Complaint.

Respectfully submitted this 1st day of April, 2022.

*/s/ Robert L. Ashe, III*
Robert L. Ashe, III
Georgia Bar No. 208077
ashe@bmelaw.com
Kamal Ghali
Georgia Bar No. 805055
ghali@bmelaw.com
Zoe M. Ben-Oren
Georgia Bar No. 878340
beiner@bmelaw.com
3900 One Atlantic Center
1201 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone: (404) 881-4100

*Attorneys for Defendants West Shore Walden LLC and West Shore, LLC*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in compliance with N.D. Ga. L.R. 5.1B. This document has been prepared in Times New Roman 14-point font.

This 1st day of April, 2022.

*Robert L. Ashe III*
Robert L. Ashe III

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused to be served a true and correct copy of the foregoing **WEST SHORE WALDEN LLC's AND WEST SHORE, LLC's MOTION TO DISMISS VISTA ACQUISITIONS, LLC'S CLAIMS** by filing same with the Court's electronic case management system which will automatically serve the following counsel of record:

Jessica Cino
Jamil Favors
KREVOLIN & HORST, LLC
One Atlantic Center
1201 West Peachtree Street, NW
Suite 3250
Atlanta, GA 30309
*cino@khlawfirm.com*
*favors@khlawfirm.com*

This 1st day of April, 2022.

*Robert L. Ashe III*
Robert L. Ashe III