IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VISTA ACQUISITIONS, LLC,    :
    :
    Plaintiff,    :
    :
v.    :    CIVIL ACTION FILE NO.
    :    No. 1:22-CV-00739-MLB
WEST SHORE WALDEN LLC;    :
WEST SHORE, LLC; John Doe 1;    :    COMPLAINT AND
John Doe 2; and John Doe 3,    :    JURY DEMAND
    :
    Defendants.    :

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND NOTICE OF OBJECTION
TO DEFENDANTS' UNTIMELY MOTION TO DISMISS
WITH MEMORANDUM IN SUPPORT**

Plaintiff Vista Acquisitions ("Plaintiff") respectfully submits this Memorandum of Law in Support of its Opposition to West Shore Walden, LLC and West Shore, LLC's ("Defendants") Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (the "Motion"). Plaintiff also includes their Notice of Objection to the Motion as untimely. The First Amended Complaint [Dkt. 11] ("First Amended Complaint" or "FAC") asserts the following Counts: (1) Civil RICO pursuant to 18 U.S.C. § 1962(c); (2) Georgia Civil RICO; (3) Conspiring and Endeavoring to Violate Georgia RICO; (3) Fraud; (4) Punitive Damages; and (5) Attorney's Fees. For the foregoing reasons, the Motion [Dkt. 18] should be denied in full.

# I.   __INTRODUCTION__

Defendants' untimely Motion is a one-sided, thirty-five page narrative rife with superficial or unsubstantiated arguments intended to fill pages rather than carry their burden under Rule 12(b)(6): demonstrating that Vista has not stated claims upon which relief may granted. Indeed, Defendants avoid the fact that this Court must accept the factual allegations in the Amended Complaint as true and construe them in the light most favorable to Vista. *Miller v. Byers*, 833 Fed. Appx. 225, 227 (11th Cir. 2020) (citing *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1210 (11th Cir. 2020)). Defendants' myopic Motion must fail because the bulk of the arguments and factual contentions are ones that require the benefit of discovery and thus should be reserved for summary judgment or the trier of fact.

Despite the cumbersome nature of the Motion, Defendants rest their Motion on four unconvincing arguments. First, Defendants argue that the Noerr-Pennington doctrine bars all of Vista's claims for relief. While the Noerr-Pennington doctrine would normally protect statements made to influence government action, the facts alleged in the First Amended Complaint establish the sham exception to the Noerr-Pennington doctrine applies to this matter. Moreover, whether prior litigation activities constitute a sham, is a matter left to the trier of fact, so Defendants' first argument fails.

2

Second, Defendants argue that Vista's RICO claim should be dismissed because Vista "failed to properly allege the elements of a federal RICO claim." Motion at 11. Defendants break this argument down into multiple subparts: (1) Vista fails to plead with particularity; (2) Vista fails to plead a pattern of racketeering activity; (3) Vista fails to adequately plead mail or wire fraud; (4) Vista cannot prove that Defendants' racketeering activity proximately caused Vista's injury; and (5) Vista failed to properly allege a RICO enterprise. Motion at 11-26.

Defendants conceptualize Vista's First Amended Complaint as an overreaction to a local zoning dispute to minimize Vista's RICO claim. But simply because a dispute arises in a commercial context, does not, in and of itself, take the case outside of the purview of RICO. *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 588 (D. Md. 2014). While Defendants attempt to throw multiple arguments at the wall to see what sticks, the bases of a federal RICO claim are straight forward. "In order to establish a RICO violation under 18 U.S.C. § 1962(c), Plaintiffs must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019). Vista satisfies each of those elements. In the First Amended Complaint, Vista alleges that through the filing of malicious litigation, and using email and other mediums of communication

3

(conduct), that Defendants acted as a union (enterprise), for the purpose of defrauding Vista of property and money (racketeering activity). Furthermore, Vista alleges Defendants' prior acts to show a pattern. FAC, ¶¶ 53-57. Under the pleading standard articulated in the Eleventh Circuit, Vista has successfully pled a Federal RICO claim. Defendants' second argument fails.

Third, Defendants repeat their prior arguments but apply them to Vista's Georgia RICO claim. "The federal and Georgia racketeering acts are 'essentially identical,' meaning failure to state a claim under the federal act warrants dismissal under the Georgia Act." *Feldman v. Am. Dawn, Inc.,* 849 F.3d 1333, 1342 (11th Cir. 2017). Therefore, Vista's arguments to substantiate its federal claim would apply to Vista's Georgia RICO claim.

Finally, Defendants take aim at Vista's state law fraud claim, attempting to undermine it by under the guise of a litigation privilege, a lack of reliance, and a failure to outline damages. None of Defendants' arguments comport with settled case law. Frivolous litigation has been the basis for many fraud claims and third-party reliance can serve as the reliance component for a fraud claim. Consequently, Vista asks this Court to deny Defendants' Motion in full.

## Legal Standard

A plaintiff confronting a motion to dismiss stands in an advantaged position: the Court must assume factual allegations to the plaintiff's benefit. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). The Court must accept "as true" the factual allegations and construe them "in the light most favorable to the plaintiff . . . ." *Miller v. Byers*, 833 Fed. Appx. 225, 227 (11th Cir. 2020) (citing *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1210 (11th Cir. 2020)).

A civil RICO complaint "must be sustained if relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *NOW v. Scheidler*, 510 U.S. 249, 256 (1994) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)) (emphasis added). Further, "[a]t this stage of the litigation, [the court] must accept [Plaintiffs'] allegations as true." *Hishon*, 467 U.S. at 73. As the Eleventh Circuit has stated, "the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is 'exceedingly low.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). The court "must find" that plaintiff has "no case" to dismiss a complaint. *Id.* at 884.

The Eleventh Circuit bolsters the non-movant's posture by reinforcing that the pleadings standard is a "liberal" one. "[T]he Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a) . . . ." *Swint v. City of Carrollton*, 859 Fed. Appx. 395, 399 (11th Cir. 2021) (internal quotation marks omitted) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004)); *see also Williams v. Hous. Auth. of Savannah, Inc.*, 834 Fed. Appx. 482, 491 n.7 (11th Cir. 2020) (noting "the liberal pleading standard for civil complaints . . . .") (citations omitted) Because Plaintiff's Complaint easily surpasses these standards, it should not be dismissed.

## II.   ARGUMENT AND CITATION OF AUTHORITY

## A.   NOTICE OF OBJECTION TO DEFENDANTS' MOTION TO DISMISS AS UNTIMELY

At the outset, Vista objects to Defendants' Motion as untimely.[1] Defendants failed to file and serve their Motion within the time prescribed by the federal rules. Defendants did not file their Motion until 11:52pm on May 2, 2022. Defendants' Motion came only after Plaintiff's counsel inquired with Defendants' counsel as to why the Motion had not been filed. Defendants did not move for an enlargement of

---

[1] Defendants failed to take heed to the Court's instructions to be timely and not wait until the last minute to file for extensions. See Dkt March 18, 2022 Order (stating "It appears Defendant West Shore simply did not get its briefing done on time. All parties are advised not to wait to the last minute to file for any further extensions.").

time and did not seek leave to file the Motion out of time. Indeed, Fed. R. Civ. P. 15(a)(3), states that "[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." *Id.* The First Amended Complaint was filed on April 15, 2022, making Defendants' Motion due on April 29, 2022. Moreover, since Defendants filed their initial Motion to Dismiss, thirty-eight (38) days after the original complaint (which Plaintiff consented to) there was no balance remaining on the original twenty-one-day response deadline under Fed.R.Civ.P. 12(a)(1)(A)(i).

Defendants may ultimately argue in their reply that the Court has discretion to treat the Motion as a Rule 12(c) motion for judgment on the pleadings. Under Rule 12(c), a party may make a motion for judgment on the pleadings "after the pleadings are closed." Fed. R. Civ. P. 12(c). The Eleventh Circuit, however, has held as error a district court's conversion of a Rule 12(b)(6) motion to dismiss to a Rule 12(c) motion for judgment on the pleadings when the pleadings are not yet closed. *Strategic Income Fund. L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). As in *Strategic Income Fund*, the pleadings in this case are not closed because Defendants have not answered the amended complaint. This

Court cannot convert Defendants' Rule 12(b)(6) motion to dismiss to a Rule 12(c) motion for judgment on the pleadings.

Although West Shore's Motion cannot properly be subject to a motion to strike under Rule 12(f) (because it is not a pleading as defined under Rule 7(a)), this Court can still "consider the merits of the arguments advanced by Plaintiff in evaluating the other relief requested in [its] motions." *See Monfort v. CKCG Health Care Servs., Inc.*, No. 119CV00354MLBRGV, 2020 WL 9599954, at *7 (N.D. Ga. May 20, 2020), report and recommendation adopted, No. 1:19-CV-00354, 2020 WL 9599752 (N.D. Ga. Sept. 12, 2020). Thus, Vista objects to the Motion, and submits that Defendants have waived their opportunity to bring their Motion to Dismiss. In the event the Court denies Vista's objection, its opposition is briefed below.

**B.** **Defendants' Fraudulent Representations Are Not Protected by Noerr-Pennington Doctrine.**

Defendants argue that the "Noerr-Pennington doctrine requires dismissal of Vista's suit…[because the alleged statements]…were made in the context of a public zoning process or litigation and therefore cannot form the bases of liability." Motion at 5. Under the Noerr-Pennington doctrine, Defendants' statements would be "immune from [] liability for engaging in conduct (including litigation) aimed at

influencing decision-making by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014).

Defendants state that Vista's RICO claims rely on "three categories of allegedly false statements: (1) a Walden representative's statement during the MPC hearing that "[we] are not objecting to this proposal but would like more time to understand what this project would entail," Dkt. 11 ¶ 26; (2) Walden's outside zoning counsel's October 28, 2021 letter to the City, *id.* ¶ 32; and (3) the Petition, *id.* ¶ 35." Motion at 5.

While Defendants correctly state the doctrine, Noerr-Pennington immunity is not a shield for petitioning conduct that, although ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972). In *California Motor,* the Supreme Court observed that the sham exception to Noerr "encompasses situations in which persons use the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Id.* The Supreme Court later described a classic example of sham litigation which is analogous to this case: "the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license

but simply in order to impose expense and delay." *City of Columbia v. Omni Outdoor Advert., Inc.,* 499 U.S. 365, 380 (1991).

In this context, the Eleventh Circuit has said that sham litigation has two elements: "(1) the lawsuit is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; and (2) the party bringing the allegedly baseless suit did so with a subjective motivation to interfere directly with the business relationships of a competitor." *Andrx Pharmaceuticals, Inc. v. Elan Corporation*, PLC, 421 F.3d 1227, 1234 (11th Cir. 2005).

While Defendants dispute the illegitimacy of their litigation, the question of whether a lawsuit is a sham is generally a question of fact for resolution by a jury. *D. H. Pace Co., Inc. v. Aaron Overhead Door Atlanta LLC,* No. 1:17-CV-3430-MHC, 2018 WL 11346526, at *2 (N.D. Ga. May 7, 2018); *see also Feminist Women's Health Ctr., Inc. v. Mohammad*, 586 F.2d 530, 543 (5th Cir. 1978) ("It is the jury's task to resolve this issue."); *Indep. Taxicab Drivers' Emps. v. Greater Hous. Transp. Co*., 760 F.2d 607, 612 n.9 (5th Cir. 1985) ("[T]he existence or nonexistence of sham-ful conduct is generally a question of fact for the jury."); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc*., 690 F.2d 1240, 1253 (9th Cir. 1982) ("Whether something is a ... mere sham, is a question of fact."); *Scooter Store, Inc. v. SpinLife.com, LLC,* 777 F. Supp. 2d 1102, 1115 (S.D. Ohio

2011) ("[W]hether a party's conduct is a genuine attempt to avail itself of the judicial process or is merely a sham is a question of fact that is inappropriate for a motion to dismiss.").

"Under a sham exception to this doctrine, activity ostensibly directed toward influencing governmental action does not qualify for *Noerr* immunity if it 'is a mere sham to cover ... an attempt to interfere directly with the business relationships of a competitor." *Octane Fitness* at 556. (internal quotations omitted). "In other words, [Defendants] must have brought baseless claims in an attempt to thwart competition (*i.e.,* in bad faith)." *Id.*

And this is a sham: Vista has properly pled that West Shore was engaged in sham litigation even under a "restrictive" interpretation of the term: "the improper invocation of the legal process to injure a competitor by the invocation itself and without any expectation of obtaining a favorable decision. In short, a sham suit would be an 'abuse' of the judicial process." *Collins & Aikman Corp. v. Stratton Indus., Inc.*, 728 F. Supp. 1570, 1579–80 (N.D. Ga. 1989) (citing *California Motor*, 404 U.S. at 513, 92 S.Ct. at 613). FAC, ¶¶ 57, 60, 78, 125, 143. Vista does not allege merely one instance of sham litigation; it alleges a Zoning Scheme that includes at least one other attempt to lodge baseless litigation (in Florida) to sabotage competition.   FAC, ¶¶ 53-57. While Defendants argue that they were exercising

their rights to influence government decision making, "[n]either the Noerr-Pennington doctrine nor the First Amendment more generally protects petitions predicated on fraud or deliberate misrepresentation." *U.S. v. Philip Morris USA*, 566 F.3d 1095, 1123 (D.C. Cir. 2009).

The requisite motive for establishing a sham exception is the intent to harm one's competitor not by the result of the litigation but "by the simple fact of the institution of litigation." *MCI Communications v. AT&A*, 708 F.2d 1081, 1156 (7th Cir.1983). Thus, the touchstone of the sham exception is whether "the desire for relief was a significant factor underlying the actual bringing and prosecution of the suit." *In re Burlington Northern,* Inc., 822 F.2d 518, 528 (5th Cir. 1987). Even incorporating the probable cause standard that Defendants drumbeat, Vista sufficiently alleged that West Shore lacked probable cause to bring its Petition for Writ such that West Shore cannot find cover under the Noerr Pennington doctrine. FAC ¶¶ 41.

To overcome "probable cause," a plaintiff must allege that "the defendant pressed the action for an improper, malicious purpose." C*atch Curve, Inc. v. Integrated Glob. Concepts, Inc*., 2011 WL 13146740, at *7–8 (N.D. Ga. Sept. 1, 2011. Vista has done so here. FAC ¶ 37.  Vista alleges that West Shore's litigation activities were objectively "baseless" and were brought with the intent to interfere

directly with the business relationship of a competitor, (FAC ¶¶ 142), and thus adequately states a claim for relief and should not be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Fort James Corp. v. J.H. McNairn, Ltd*., No. 1:04-CV-3000-CAP, 2005 WL 8154754, at *4 (N.D. Ga. Oct. 7, 2005).

Furthermore, the Eleventh Circuit has stated that sham litigation "comes into play where the party petitioning the government is not at all serious about the object of that petition but engages in the petitioning activity merely to inconvenience its competitors." *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1559–60 (11th Cir.). If Defendants' prior acts in Florida are not a sign that Defendants have intended to inconvenience and stifle its competitors, it should be clear from Defendants' actions against Vista.  If Defendants truly believed in the legitimacy of their concerns, they would not have dismissed the Petition for Writ two days before the hearing. FAC, ¶ 50.[2] Simply put, Defendants are highly motivated competitors who are capable of devoting considerable resources to their opposition tactics. Defendants' intent was not merely to inconvenience competition (the threshold required), but to crush competition. West Shore Walden's Petition for Writ was a sham, and the Noerr-

---

[2] Pursuant to O.C.G.A. § 51-7-84, Vista cannot bring a frivolous litigation claim until "the final termination of the proceeding." Because Defendants dismissed "without prejudice," final termination has not occurred. Similarly, under OCGA 5-4-18, Vista is unable to seek damages for frivolous certiorari because the Writ was never heard on the merits. Vista is in a position where Defendants can purposefully delay Vista's plans and Vista does not have a mechanism to seek redress.

Pennington doctrine does not apply here. As further evidence of the Petition for Writ being a sham, West Shore Walden filed the writ and did not notify any of the parties (FAC ¶ 36) and did not even bother to comply with the statutory requirements of posting a bond and receiving a certificate from the governmental entity whose decision it appealed despite the fact that such requirements are clearly spelled out in O.C.G.A. § 5-4-5(a). FAC ¶ 46 , Exhibit J.

Instead of challenging Vista's Complaint on the merits, Defendants instead throw up a smoke screen and argue immunity cloaks their conduct. Defendants were not seeking legitimate government redress, they instead used litigation as an improper weapon in economic warfare.

**C.    Vista Pleads a Cognizable Federal Rico Claim.**

     **1.    Vista Properly Pleaded Their RICO Claim with Particularity.**

Vista's RICO claim against Defendants does not fail for lack of particularity. When alleging a federal RICO claim, a Plaintiff must plead its obligations with "Fed. R. Civ. P. 9(b)'s specificity requirements." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016). In short, Vista "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Vista has met its burden in pleading its RICO claims with particularity. Defendants rely on *Ray v. Spirit Airline, Inc.*, because in that case the "complaint failed to plead, among other salient details, the precise statements in Spirit's advertisements that were allegedly deceptive, where the plaintiffs saw the advertisements, the costs of the tickets the plaintiffs purchased, and the steps the plaintiffs took on the website when they purchased tickets." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016). Vista does not make the same mistake, and its First Amended Complaint does precisely what the law requires: alleging with specificity of the statements made, when they were made, and to whom they were made. FAC, ¶ 80. Vista also included exhibits of the false statements. FAC, Exs. E and F. Vista's allegations show that Defendants intended to defraud Vista out of money and property, and made these misrepresentations in the course of doing so. FAC ¶¶ 47, 69, 73.

Moreover, Vista showed that Defendants ongoing activity continued after the initial misrepresentations to the City of Savannah and the Superior Court of Chatham County. Defendants' ongoing fraudulent activity included not responding to various letters and motions to resolve the matter and voluntarily dismissing the matter without prejudice with knowledge that it would have six months to file its Petition for Writ. FAC, ¶¶ 44-52. These allegations not only show the fraud, but also the

circumstances surrounding the fraud. Vista has pleaded the requisite particularity in its claims.

### 2.     Vista Has Successfully Pled a Pattern of Racketeering Activity.

A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity…" 18 U.S.C. § 1961(5). While Defendants acknowledge the federal standard, Defendants allege that (1) Vista has not pled two racketeering activities; and (2) Vista fails to show the conduct was of a continuing nature. Motion at 17-18.

Racketeering activity is defined by statute. 18 U.S.C. § 1961(1). Of the acts listed under racketeering activity are "section 1341 (relating to mail fraud)" and "section 1343 (relating to wire fraud)." *Id.* While Defendants acknowledge that Plaintiffs have pled both mail fraud and wire fraud, Defendants argue "[w]here a plaintiff alleges a mail or wire fraud scheme as a predicate act, it doesn't get to add up every use of the mails or wires to create a 'pattern'" Motion at 18. Defendants contend that to extent there was mail or wire fraud, there was only one act and thus, no pattern.

Defendants again cite to *Cisneros* to support their argument that Vista has failed to show a pattern. Motion at 18-19. "[I]ndependently chargeable instances of mail or wire fraud cannot constitute a "pattern of racketeering activity" when they arise from a single transaction." *Cisneros v. Petland*, Inc., 972 F.3d 1204, 1216 (11th Cir. 2020). Unlike in *Cisneros*, Vista has pled multiple transactions that align with the statute's definition of mail fraud and wire fraud.

In *Cisneros*, the Court stated that "all three of [the defendants'] predicate acts emerge[d] from a single phone call on December 19, 2015. *Id.* at 1219. Because the *Cisneros* court felt that the three predicate acts "ar[o]se from a single transaction," the plaintiff failed to show a pattern. The matter before the Court is distinguishable. Vista has pled multiple acts of racketeering.

- Prior Act: In **April 2020**, West Shore Legacy, LLC, an affiliate and/or subsidiary of West Shore, commences a Petition for Writ of Certiorari in Alachua County, Florida alleging that the approval of a competitor's (Fickling and Company, Inc. and NGUI Acquisitions) petition to amend a comprehensive plan was not in compliance with existing statute. FAC, ¶ 53. (emphasis added).

- Wire Fraud: On information and belief, from **September 21, 2021** to present, Defendants exchanged text, emails and telephone communications regarding the Zoning Scheme. FAC, ¶ 105. (emphasis added).

- Mail Fraud: West Shore Walden submitted the **October 28, 2021** letter to the City of Savannah by depositing said letter or electronically transmitting said letter to the City of Savannah in furtherance of its scheme to defraud Vista. FAC, ¶ 98. (emphasis added).

- Mail Fraud: [P]leadings and communications sent to the Chatham County Superior Court on **December 9, 2021**… FAC, ¶ 95. (emphasis added).

Although Defendants attempt to cast this case as a local zoning dispute, the facts at bar set this case "above any other dogfight" between two competitors. *HMK Corp. v. Walsey,* 828 F.2d 1071, 1075 (4th Cir. 1987). Namely, the presence of a pattern. As the *HMK* Court noted, that "the pattern requirement certainly does not bar all RICO claims arising in the zoning context." *Id.* The Fourth Circuit observed "that a plaintiff who alleged pervasive involvement by a [competitor] in the political process through widespread racketeering activity could indeed meet the pattern requirement." *Id.*

Defendants' actions are anything but routine in this case, and RICO is intended by Congress to act as a guardrail "against ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Id.* at 1075–75 (quoting *International Data Bank v. Zepkin,* 812 F.2d 149, 155 (4th Cir.1987)). The social well-being here is providing more housing at a time when there is a nationwide shortage. Vista's allegations "fall within the exception expressly left open by the Fourth Circuit." *Bieter Co. v. Blomquist*, 987 F.2d 1319, 1330 (8th Cir. 1993). Vista has shown a pattern in accordance with 18 U.S.C. § 1961(5).

While Defendants would lead the Court to believe that Vista's alleged acts are

a single transaction. Defendants' own cited case law – *Cisneros* – does not support that conclusion. Unlike in *Cisneros* where the alleged racketeering acts occurred on one single phone call, Vista alleges separate racketeering acts, each of which are on separate dates.

       *a.*   *Vista Alleges Racketeering Activities of Almost Two Years.*

Next, Defendants argue that "the alleged racketeering did not take place over a 'substantial period of time.'" Motion at 19. Defendants again cite to *Cisneros*, among other cases, which articulate the Eleventh Circuit's view that "we measure a substantial period of time in years, not in weeks." *Cisneros*, 972 F.3d at 1216. Defendants conclude that Defendants alleged racketeering only lasted for five months. See Motion at 19 (stating that "Even implausibly giving Vista the benefit of the entire time period, from the date on which the MPC met (September 21, 2021) through the date on which Walden dismissed the Petition (February 12, 2022), only yields **five months'** worth of alleged racketeering activity."). Defendants misread Plaintiff's First Amended Complaint and lose sight of their prior actions which are properly pled in Vista's First Amended Complaint.

Defendants' flawed five-month calculation only incorporates those acts from 2020 to 2021, and conveniently ignores that Vista alleges that the activity began no later than April 2020, with the actions taken in Florida (FAC, ¶ 53), and extends

through today since Defendants continue to reap the benefits of their Zoning Scheme because the Chatham Center Project is currently stalled as a direct result of Defendants' actions. Vista further alleges that in the April 2020 prior acts, Defendants filed their petition for writ as a "pattern [that] is a continuous and ongoing practice of filing frivolous actions…" FAC, ¶ 56. Taking both, Defendants' prior acts beginning in April 2020 in Florida and its predicate acts here in Georgia from 2021-2022, these acts occurred over the period of almost two years which would constitute a "substantial period of time."

Finally, Defendants argue that there is no possibility of continuity – that Defendants do not "pose a threat of continued criminal activity in the future." Motion at 19-20. Again, Defendants misconstrue the First Amended Complaint. Vista alleged that Defendants have caused "not less than $8,000,000" in damages. FAC, ¶ 58. Vista further alleges that "there is a threat that the Defendants will continue to their racketeering activities through the West Shore Enterprise to delay or sabotage competition from Plaintiffs and other parties in the future." FAC, ¶ 60. Finally, Vista alleges that by dismissing its Petition for Writ without prejudice, Defendants would have the ability to refile in six months. FAC, ¶50. Vista's allegations show that it has been harmed, is being harmed, and will continue to be harmed without court intervention. FAC, ¶ 57.

### 3.    Vista Properly Pleads both Mail and Wire Fraud.

Defendants argue that Vista fails to plausibly allege mail and wire fraud because "the overwhelming weight of authority holds that litigation activities alone do not constitute predicate acts of mail or wire fraud." Motion at 21 (citing *"United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) ("A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility."). While the court in *Pendergraft* did note that several other courts have rejected the filing of litigation documents as being mail fraud, it would be a broad reading of *Pendergraft* to assert a *per se* rule that malicious or fraudulent litigation cannot serve as mail or wire fraud.

Moreover, some courts have held that the filing of a fraudulent lawsuit can be a predicate act of mail and wire fraud. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 443 (5th Cir.2000) ("Among the predicate acts alleged to form a pattern of racketeering activity were instances of conduct directly connected to the filing of the state tort suit, including the filing of that suit."); *Warnock v. State Farm Mut. Auto. Ins. Co.,* No. 5:08cv01, 2008 WL 4594129, at *7 (S.D. Miss. Oct.14, 2008) (finding that because the plaintiff alleged more than the mere filing of false litigation documents, the plaintiff adequately pled a pattern of racketeering activity); *State Farm Mut. Auto. Ins. Co. v. Makris,* No. 01–5351, 2003 WL 924615, at *10

(E.D. Pa. Mar.4, 2003) (holding that the filing of fraudulent lawsuits against State Farm's insureds to recover monetary damages from State Farm was an essential element of the scheme to defraud State Farm).

Importantly, the *Pendergraft* court's conclusion was fact-intensive, viewed through the lens of whether the malicious litigation *at issue* was used as a means of deceit. Based on the facts in *Pendergraft*, the court concluded that "[s]ince there was no intent to deceive, there was no 'scheme to defraud,' and we hold that [defendants]'s mailing of litigation documents, even perjurious ones, did not violate the mail-fraud statute." *Id.* at 1209.

In the present matter, there was an intent to deceive, and that intent was pleaded in the First Amended Complaint. Vista pleads that Defendants "electronically filed its false Petition for Writ (using interstate wires), misrepresented the bases for the Petition for Writ," which caused the "City of Savannah and Vista [to be] deceived by this fraudulent misrepresentation and the communications regarding the Petition for Writ." FAC, ¶¶ 103-104.

Furthermore, several successful fraud prosecutions have been based, in whole or in part, on conduct that occurs in litigation. *See, e.g.*, *United States v. Eisen*, 974 F.2d 246, 253–54 (2d Cir. 1992) (affirming mail fraud charges based on conduct in a civil lawsuit); *United States v. Lee*, 427 F.3d 881, 890–91 (11th Cir. 2005) (same);

*United States v. DeGeorge*, 380 F.3d 1203, 1218–19 (9th Cir. 2004) (affirming perjury and mail fraud convictions based on conduct in a civil lawsuit).

The Second Circuit has squarely held that civil litigation tactics can give rise to fraud allegations. *Eisen*, 974 F.2d at 253–54. In *Eisen*, attorneys and their staff were accused of manufacturing evidence, suborning perjury, and including misrepresentations in court filings. *Id.* at 253. The Second Circuit found that the defendants' lies, misrepresentations, and other dishonest behavior constituted mail fraud because they engaged in those tactics to deceive the civil defendants into settling the cases or to secure favorable jury verdicts at trial. *Id.* The fact that their actions were connected to civil litigation did nothing to immunize them from prosecution. *Id.* at 253 ("Litigants depend on the integrity of the conduct of participants in civil proceedings .... It is one thing to challenge the perception, memory, or bias of an opponent's witnesses; it is quite another for a party's lawyer and a witness to concoct testimony that they know has been wholly fabricated.").

Like the *Eisen* court, Vista asks this Court to acknowledge Vista's pleadings that Defendants' litigation was malicious and rife with misstatements intended to defraud Vista. Finally, it should be noted that Vista does not allege that Defendants were engaged in "litigation activities **alone.**" Motion at 21-22. (emphasis added). Rather, Vista alleges that those litigation activities are encompassed in a broader

scheme to defraud. FAC, ¶¶ 105, 125. For those reasons, Vista had pled cognizable mail and wire fraud claims.

### 4.    "Proximately Caused" Argument.

Defendants argue that this Court should dismiss Vista's RICO claim because Vista "fails to properly allege any injury proximately caused by an act of racketeering." Motion at 22. In Defendants' narrative, the approval of Vista's rezoning application erases any injury, or if any injury was suffered, it flows from "an alleged impairment of an intangible properly right...." Motion at 22. Defendants are mistaken. Not only does Vista plead a cognizable injury, but Vista also pleads in detail the various facets that make up such injury.

 On December 9, 2021, Defendants filed their Petition for Writ, which effectively upheld Vista's ability to purchase the subject property. FAC, ¶ 35. "On Saturday, February 12, 2022, West Shore Walden voluntarily dismissed its Petition pursuant to O.C.G.A. § 9-11-41(a)(1) without prejudice meaning that West Shore Walden could refile its Petition for Writ in six months." FAC, ¶ 50. Vista further alleges that "Defendants' actions have directly caused extensive and tangible damage to Vista in an amount not less than $8,000,000…." FAC, ¶ 58. Because Defendants can hold Vista hostage in a six-month purgatory, Vista will continue to incur damages and stronghold Vista from closing on the Subject Property and

benefiting from the development of the land. Therefore, Defendants' argument that Vista's damages are only "intangible losses," is incorrect, because Vista has pled a cognizable injury by pleading an estimate of its losses and an explanation of where the losses stem. FAC, ¶¶ 58-60.

Defendants put forth two cases, *Cleveland* and *Kelly*, that purport to state that injuries to inanimate objects are not injuries viable under a RICO claim. Motion at 23-25. Both cases are distinguishable. In *Cleveland*, the Court contemplated whether mail fraud "reaches false statements made in an application for a state license." *United States*, 531 U.S. 12, 15 (2000). The *Cleveland* Court further clarified "that the object of the fraud may become property in the recipients' hands; for purposes of the mail fraud statute, the thing obtained must be the property in the hands of the victim." *Id.* Similarly, in *Kelly v. United States*, the Court considered whether "the realignment of [] toll lanes," which was an exercise in regulatory power would constitute wire fraud. 140 S.Ct 1565, 1568 (2020). The *Kelly* Court concluded that since the alleged scheme was not directed at the movant's property, but at regulatory power – it was invalid to substantiate a RICO claim. *Id.* at 1572.

Unlike in *Cleveland* and in *Kelly*, where the objects being defrauded were state licenses (*Cleveland*) and regulatory power (*Kelly*), Vista was defrauded out of real objects – money and property. While Defendants argue that "Vista's ability to

purchase and develop the Subject Land" is Vista's loss (Motion at 23), that argument forgets that Vista pleads that it was defrauded of funds and the property. *See* FAC, ¶¶ 72, 100, 114, and 121.

Because Vista's damages stem from Defendants' malicious misrepresentations, Defendants' racketeering activity is a proximate cause of Vista's injury. But for Defendants' October 28, 2021 Letter and December 9, 2021 Petition for Writ, Vista would have the benefit of the property, would not have spent considerable resources preparing for the February 14, 2021 motions' hearing, and would not continue to lose out on money given that Defendants can refile their petition in six months.

### 5. Vista has Successfully Pleaded an Enterprise.

"From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Such enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* at 945. Basically, "an association-in-fact enterprise is simply a continuing unit that functions with a purpose." *Id.* at 948.

Defendants argue that Vista has not met its "association-in-fact" pleading requirements because it allegedly "fails to allege any facts about Defendants' corporate structure, much less a legally significant distinction between defendants and the alleged enterprise." Motion at 27 (*citing Ray v. Sprit Airlines, Inc.*, 836 F.3d 1340, 1355 (11th Cir. 2016)). It is notable that Defendants cite to no supportive case law for its "corporate structure" argument and fails to give credit to Vista's pleadings which articulate the roles of the various defendants and the enterprise they operated to Vista's detriment.

Vista names five separate persons in its First Amended Complaint: West Shore Walden, West Shore, and John Doe Numbers 1 – 3. FAC at 1. Vista also alleges that the parties acted in concert to defraud Vista and outlines the actions the parties took. FAC, ¶¶ 67-72. Defendants essentially ask this Court to dismiss Vista's RICO claim because it has not had the benefit of discovery. A civil RICO complaint "must be sustained if relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *NOW v. Scheidler*, 510 U.S. 249, 256 (1994) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)) (emphasis added). The standard is not that Vista, before discovery, be able to name every person and detail, but instead the standard is that Vista has plead a "set of facts that could be proved consistent with the allegations". *Id.* Vista has satisfied this

requirement.

**6.   Vista's Georgia RICO Withstands Scrutiny Similar to Vista's Federal Rico Claim.**

Under this argument, Defendants spend multiple pages regurgitating its previous arguments and applying them to Georgia's RICO statute. Motion at 28-31. Here, Defendants' request for dismissal of Count III is entirely predicated on the same arguments for dismissal federal RICO claims. The analysis applied to federal RICO claims, "is equally applicable to the state RICO claims." *All Care Nursing Serv., Inc.v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 (11th Cir. 1998).

*a.   Vista Adequately Pleads Facts to Satisfy O.C.G.A. § 16-14-4(a).*

"It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a). Defendants argue that Vista fails to adequately plead a violation to O.C.G.A. § 16-14-4(a) because: (1) there are no allegations that Defendants maintained or acquired an interest in an enterprise through racketeering activity; (2) Vista fails to allege which predicate acts it refers to; and (3) Vista fails to show that any of the alleged predicate acts proximately caused any harm. Motion at 29-30. Defendants are wrong.

As Vista pled in its First Amended Complaint and restated in this response,

Vista pleads three predicate acts and a prior act to show continuity:

1. From September 2021 to present, Defendants exchanged text, emails and telephone communications regarding the Zoning Scheme. FAC, ¶ 105.

2. On October 28, 2021, made false statements in its letter and transmitted such letter to the City of Savannah (mail fraud). FAC, ¶ 98.

3. On December 9, 2021, Defendants made false statements in its Petition for Writ which was transmitted to the Chatham County Superior Court (mail fraud). FAC, ¶ 95.

4. Vista further pleads that in April 2020, a subsidiary of Defendants filed a fraudulent Petition for Writ Alachua County, Florida. FAC, ¶ 53.

Vista further explains that through Defendants' racketeering activity, it effectively defrauded Vista out of "valuable property." FAC, ¶ 114. Finally, Vista pleads that "Defendants have intentionally misrepresented" its reasons for challenging the zoning activity and because of those misrepresentations, "Vista is now unable to develop the Subject Property and damages are increasing every day." FAC ¶¶ 137-138. Viewing these pleadings in a light most favorable to the non-movant, Vista has met its obligation under O.C.G.A. § 16-14-4(a).

   b.   *Vista Properly Pleads an Overt Act.*

   While not clear from its Motion, Defendants seem to suggest that Vista has failed to plead an overt act to satisfy O.C.G.A § 16-14-4(c)(1)-(2). Motion at 30 (*citing Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 728 (11th Cir. 2021). Vista has satisfied this standard.

It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money. O.C.G.A § 16-14-4(a). It shall be unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section. O.C.G.A § 16-14-4(c).

To violate Section 16-14-4(c), one must either commit an overt act to "effect the object of" the endeavor or conspiracy or a co-conspirator must commit such an overt act. *Doe #1* at 728. In short, Vista must have alleged that Defendants completed an overt act in furtherance of its scheme to defraud Vista of property and money. Vista accomplishes this requirement by noting that Defendants maliciously filed their October 28th letter and its December 9th Petition for Writ. FAC, ¶¶ 95, 98. Defendants' insistence of negating Defendants' pleadings are unsuccessful.

### 7.    Vista Pleaded Their Fraud Claim with Particularity.

Finally, Plaintiffs' fraud claim against Defendants does not fail. "In order to prove fraud, the plaintiff must establish five elements: (1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff." *Engelman v. Kessler*, 340 Ga. App. 239, 246 (2017). O.C.G.A. § 9-11-9(b) states that: "In all

30

averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "[I]t is necessary that the complainant show, by specifications, wherein the fraud consists. Issuable facts must be charged." *Woodstone Townhouses, LLC v. S. Fiber Worx, LLC*, 358 Ga. App. 516 (2021). The requirement of particularity protects defendants from spurious charges, and the charges here are by no means spurious. *Mathis v. Velsicol Chem. Corp.,* 786 F.Supp. 971, 976 (N.D. Ga.1991).

Vista's First Amended Complaint does precisely what the law requires – plead where the fraud existed with particularity. The First Amended Complaint alleges that Defendants made false statements to the City of Savannah and the Superior Court of Chatham County. FAC ¶¶ 133-134. The City of Savannah and Vista relied on those statements when considering Vista's rezoning petition. FAC ¶ 96. Vista has pleaded the requisite particularity of the fraud claims. Moreover, the Superior Court of Chatham County and Vista relied on Defendants' Petition for Writ when it "set a hearing to review Vista's motions and hear arguments on February 14, 2022. FAC, ¶ 140. Vista followed and relied on those misrepresentations when it prepared to defend itself in said hearing. FAC, ¶ 140.

These misrepresentations have caused Vista "monetary damages in an amount not less than $8,000,000..." FAC, 149. Moreover, broader allegations are permissible before the benefit discovery: "Understandably, having been written before any discovery was conducted, other allegations are broad. Nevertheless, the complaint does withstand the scrutiny applied to fraud allegations." *Pine Ridge Recycling, Inc. v. Butts Cnty., Ga.,* 855 F. Supp. 1264, 1274 (M.D. Ga. 1994). Defendants' contention that these facts are insufficient "as a basis for a fraud claim" is insufficient.

Defendants seem to contend that in order to establish a Fraud claim, Vista must show that they, rather than a third party, relied upon the fraudulent actions. Motion at 33-34. Georgia does recognize fraud and misrepresentation claims where a plaintiff acts in justifiable reliance on a misrepresentation made through a third-party, and Vista has alleged that in the documents transmitted to the City of Savannah and the Superior Court for Chatham County. FAC ¶ 83. Vista not only had to rely on these documents, but it also had no other option since court action stalled the financing, closing, and development of the Subject property. Vista could not simply say to its partners and the seller that the Petition for Writ should be ignored because it was a misrepresentation and then reasonably move forward with the development. *Whittaker v. Auto-Owners Insurance Co.*, 2021 WL 3630098, at *4

(M.D. Ga. May 5, 2021).

The legal action overlaying the fraud would effectively give a plaintiff no recourse if it could not plead that the fraud to a third party caused its damages, and some jurisdictions expressly recognize the doctrine of third-party reliance with respect to common law fraud claims. *See Prestige Builder & Mgmt. LLC v. Safeco Ins. Co. of Am.*, 896 F. Supp. 2d 198, 203 (E.D.N.Y. 2012); *O'Brien v. Argo Partners, Inc.*, 736 F.Supp.2d 528, 537 (E.D.N.Y.2010) (holding that "fraud may exist where a false representation is made to a third party").

Even Georgia courts have recognized that a plaintiff may recover in fraud from a party with whom he has not dealt directly, but whose false and knowing representations have induced reliance and caused damage. In *Fla. Rock & Tank Lines, Inc. v. Moore*, 258 Ga. 106, 107, 365 S.E.2d 836, 837 (1988), the Georgia Supreme Court held that "the requirement of reliance is satisfied where (as in this case) A [West Shore], having as his objective to defraud C [Vista], and knowing that C will rely upon B [the City of Savannah and the Superior Court for Chatham County], fraudulently induces B to act in some manner on which C relies, and whereby A' purpose of defrauding C is accomplished." *Id.*

The government entities had to act upon the misrepresentations of West Shore which caused Vista to then shut down the entire Project. An action for fraud can lie

when the "known third party's reliance was the desired result of the misrepresentation." *Robert & Co. Assoc. v. Rhodes–Haverty Partnership,* 250 Ga. 680, 681–682, (1983); *White v. BDO Seidman*, LLP, 249 Ga. App. 668, 670–71, (2001).

Admittedly, the difficulty in this case is the "familiar precept that actionable fraud must be based upon a misrepresentation made to the defrauded party, and relied upon by the defrauded party." *Fla. Rock & Tank Lines*, 258 Ga. 106, 106–07. The instant case does not "fit neatly" within the traditional precept, as West Shore's Zoning Scheme succeeded in using misrepresentations to government officials, as conduit to bring Vista's project to a halt. *Id.*

Defendants' "designs and deeds were fraudulent," and the allegations clearly point to the fact that West Shore made representations regarding the validity of the Petition for Writ, that it knew that these representations were false, and that he had made the false representations with a deceitful intent and purpose. *Id*; FAC ¶ 83.  As a result of Defendants' false representations, the City and the Superior Court were fraudulently induced into taking actions that directly caused Vista's project to stop. The filing and docketing of the baseless Petition for Writ froze the financing, closing and development of the Subject Property. Vista requests that this Court deny the Motion as to Count IV.

**8.    Because Some or All of Vista's Claims Remain, so Should Vista's Claims for Attorneys' Fees and Punitive Damages.**

Vista pleaded that they are entitled to punitive damages and their reasonable attorneys' fees because Defendants' conduct was intentional, deliberate, malicious, willful, and with specific intent to cause harm, and that Defendants have acted in bad faith, been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense. FAC ¶¶ 150-150. Defendants' motion to dismiss these claims depend on their argument that Vista's First Amended Complaint fails to state claims for which relief can be granted. Motion at 35. Because the Court should deny Defendants' Motion as to Vista's substantive claims, Vista's attorneys' fees and expenses should survive. *Kahn v. Britt*, 330 Ga. App. 377, 393 (2014) (trial court erred is granting summary judgment as to attorneys' fees claim because it erred in granting summary judgment to the substantive claims). The Motion must be denied as to Counts V and VI.

### III.    Conclusion

For the foregoing reasons, Vista respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiffs' Amended Complaint in its entirety.

[signature on following page]

Respectfully submitted, this 16th day of May 2022.

**KREVOLIN & HORST, LLC**

<u>/s/ Jessica Cino</u>
Jessica Cino
Georgia Bar No. 577837
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Jamil A. Favors
Georgia Bar No. 549881
*Attorney for Plaintiff*

One Atlantic Center
1201 W. Peachtree Street, NW
Suite 3250
Atlanta, Georgia 30309
(404) 888-9700
cino@khlawfirm.com
favors@khlawfirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, NDGa, using font type of Times New Roman and a point size of 14.

Dated: May 16, 2022                    <u>/s/ Jessica Cino</u>
                                       *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this date caused to be electronically filed a copy of the foregoing PLAINTIFF'S RESPONSE TO WEST SHORE WALDEN LLC's MOTION TO DISMISS VISTA ACQUISITIONS, LLC's CLAIMS with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

Dated:  May 16, 2022                          /s/ Jessica Cino
                                             *Attorney for Plaintiff*