## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Vista Acquisitions, LLC,

        Plaintiff,

                Case No. 1:22-cv-739-MLB

v.

West Shore Walden LLC, et al.,

        Defendants.

_____/

## <u>OPINION & ORDER</u>

Plaintiff brings civil RICO and fraud claims against Defendants, alleging they abused a city zoning process and filed frivolous litigation to prevent Plaintiff from rezoning land Plaintiff wants to buy.  The Court grants Defendants' motion to dismiss and for sanctions.  (Dkts. 18, 22.)

## I.   Background

Plaintiff has a contract to purchase property in Savannah, Georgia. (Dkt. 11 at 3.)   In August 2021, Plaintiff applied to the Savannah Metropolitan Planning Commission to rezone that property so Plaintiff could build an apartment complex.  (*Id.* ¶ 15.)

Defendants own property across the street. (*Id.* ¶ 19.)[1] Their representative attended a public meeting with the planning commission to discuss the rezoning application. (*Id.* ¶ 26.) He said Defendants were "not objecting to [Plaintiff's] proposal but would like more time to understand what this project would entail." (*Id.*) One of Plaintiff's representatives was also at the meeting. (*Id.* ¶ 28.) He gave his contact information to Defendants' representative and encouraged Defendants to call with any questions about the project. (*Id.*) Defendants never did so. (*Id.* ¶ 29.) The planning commission approved Plaintiff's rezoning plan. (*Id.* ¶¶ 21, 29.)

---

[1] According to the amended complaint, Defendant West Shore Walden owns the adjoining property. Plaintiff, however, does not really explain the relationship between Defendant West Shore Walden and Defendant West Shore and, more frustratingly, conflates the two. It alleges, for example, that West Shore filed a petition in the Chatham County Superior Court but then immediately refers to that filing as West Shore Walden's petition. (Dkt. 11 at ¶¶ 35, 57.) To sow even more confusion, Plaintiff includes as defendants three "John Does" who it describes as unknown people or entities who work for, represent, or own either West Shore or West Shore Walden. (Dkt. 11 at ¶4.) The Court has not tried to untangle this morass for Plaintiff but rather refers to these two entities and the unidentified individuals as "Defendants" unless stated otherwise.

Plaintiff tried to speak with Defendants about the project, but Defendants were not responsive. (*Id.* ¶¶ 30-31.) Instead, Defendants wrote the City of Savannah to oppose Plaintiff's rezoning application. (*Id.* ¶ 32.) Defendants alleged the City had "insufficient information" to approve the plan, so doing so would be "a manifest abuse of the zoning power." (*Id.*) The City approved Plaintiff's application anyway. (*Id.* ¶ 34.)

Defendants appealed that decision to the Chatham County Superior Court, alleging the City failed to follow zoning procedures, ignored zoning requirements, and "deprived" itself of key information about the project. (*Id.* ¶¶ 35, 38.) Defendants did not notify Plaintiff of the appeal. (*Id.* ¶ 36.) When it learned of it through other sources, Plaintiff suspended its purchase of the property and halted its development plans. (*Id.*) Plaintiff did so even though (according to the amended complaint) Defendant's appeal contained numerous misrepresentations of material facts. (*Id.* ¶ 37.) Plaintiff sent Defendants a cease and desist letter claiming Defendants were tortiously interfering with Plaintiff's development of the property, damaging its relationships with "actual or potential business partners," and

impugning Plaintiff's "character and business practices." (*Id.* ¶ 42; Dkt. 11-8.)[2]   Plaintiff demanded Defendants dismiss their petition and threatened legal action. (*Id.*)  Plaintiff also referred to a lawsuit one of Defendants' affiliates had previously filed in Florida to stop another development project and (based on that lawsuit) alleged Defendants use litigation to undermine the zoning process. (Dkt. 11 ¶¶ 42, 53; Dkt. 11-8 at 3.)  Defendants did not respond. (*Id.* ¶¶ 47, 49.)

Plaintiff then filed two motions to dismiss Defendants' Superior Court petition. (Dkt. 11 ¶¶ 45–46.)  Defendants did not respond to those either and, when the court granted Plaintiff's request for a hearing, Defendants voluntarily dismissed their petition without prejudice. (*Id.* ¶¶ 48, 50.)  Indeed, it did so just one business day before the hearing. (*Id.*)  That dismissal would have allowed Defendants to refile their petition within six months. (*Id.* ¶ 50.)  Plaintiff does not allege Defendants did so or that Defendants engaged in any other relevant

---

[2] The Court may consider the letter itself—which is attached as an exhibit to Plaintiff's complaint—in deciding Defendants' motion to dismiss. *See Basson v. Mortg. Elec. Reg. Sys., Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018) (a "district court may always consider exhibits attached to the complaint on a 12(b)(6) motion, because exhibits are part of the pleadings").

activity since dismissing the petition.  Plaintiff alleges Defendants' "last-minute dismissal" was a "tactic" or part of a "scheme" to hold Plaintiff's purchase of the property "hostage for the next six months with the specter of a renewed" appeal of the zoning decision.  (*Id.* ¶ 51.)

Plaintiff sued Defendants alleging claims for federal RICO violations (Count I), Georgia RICO violations (Count II), conspiracy to violate Georgia RICO laws (Count III), and fraud under Georgia law (Count IV). Plaintiff says Defendants' actions were part of an ongoing scheme to protect their "own economic gain and competitive advantage and not based upon a legitimate zoning concern."  (*Id.* ¶¶ 52, 68.) Plaintiff claims to have been injured by Defendants' scheme.  It says it will only purchase the property if it can rezone and develop it.  So, it says Defendants' conduct (including the "specter" of a renewed appeal) has caused it to delay its purchase of the property and incur about $8 million in costs, including delays in closing on the property, paying third party vendors, development and construction, procurement of professional services, and operating income.  (*Id.* ¶ 58.)  It says its damages continue to accrue.  (*Id.* ¶ 59.)

## II.  Discussion

### A.    Motion to Dismiss Under the First Amendment

Plaintiff bases each of its claims on an assertion that Defendants made false statements on three occasions: at the planning commission meeting when Defendants said "[we] are not objecting to this proposal but would like more time to understand what this project would entail," (Dkt. 11 ¶ 26); in the October 28 letter to the City of Savannah when Defendants alleged the City had insufficient information to approve the plan, (*Id.* ¶ 32); and in the Chatham County Superior Court petition when Defendants claimed the City failed to follow mandatory zoning procedures and requirements before approving Plaintiff's application (*Id.* ¶ 35).  Defendants say all Plaintiff's claims must be dismissed under the *Noerr-Pennington* doctrine because Defendants made the statements while exercising their First Amendment right to petition the government. Plaintiff says that doctrine does not apply.  (Dkt. 19 at 3–4.)[3]

---

[3] Plaintiff also says Defendants' motion was filed one business day late under Federal Rule of Civil Procedure 15, so the Court should consider the motion waived. (Dkt. 19 at 6–8.)  Plaintiff is wrong.  Even assuming Defendants' deadline was governed by Rule 15, that rule provides "any required response to an amended pleading must be made" either "within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."  Fed. R. Civ.

The *Noerr-Pennington* doctrine was announced by the Supreme Court to provide immunity from antitrust liability for parties who petition legislative officials in an effort to accomplish anticompetitive outcomes. *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, (1965). The Supreme Court later made it clear "the right to petition extends to all departments of the Government," including specifically the

---

P. 15(a)(3). Plaintiff claims because it filed its amended complaint on April 15, 2022, Defendants' due date was April 29. So, Plaintiff says, Defendants' filing their motion on May 2 was untimely. But "[i]t is only when the deadline for answering the original complaint has lapsed that the second prong providing 14 days applies." *Berlinger v. Wells Fargo Bank, N.A.*, 2013 WL 12357803, at *1 (M.D. Fla. July 15, 2013). Defendants responded to Plaintiff's original complaint on April 1, 2022 by filing a motion to dismiss under Rule 12(b)(6). (Dkt. 9.) That motion tolled Defendants' deadline for responding to the original complaint. *See* Fed. R. Civ. P. 12(a)(4). In fact, the Court expressly directed that Defendants would have 30 days to answer Plaintiff's complaint from entry of any order resolving Defendants' first motion to dismiss. (*See* docket entry dated 03/18/2022.) The Court never ruled on that motion because Plaintiff filed an amended complaint. So, Defendants' response deadline never triggered. But even assuming the Court's April 22 order granting the parties' joint motion for leave to file excess pages on the briefing for *this* motion implicitly denied Defendants' *first* motion, Defendants would still have had until May 6 (*i.e.*, the 14-day period provided under Rule 12(a)(4)) or May 23 (*i.e.*, 30 days after entry of the Court's order on Defendants' first motion to dismiss) to respond. Defendants' motion is timely under any proper calculation.

right to petition courts for redress.  *BE&K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 252 (2002).  The Supreme Court, the Eleventh Circuit, and other courts have extended *Noerr-Pennington* protection beyond the antitrust context.  *Id.* (recognizing application of *Noerr-Pennington* immunity to claims under National Labor Relations Act); *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1562 (11th Cir. 1992) (applying doctrine to Alabama Unfair Trade Practices Act); *Sabal Palm Condos. Ass'n v. Fischer*, 2014 WL 988767, at *22 (S.D. Fla. Mar. 13, 2014) ("Because the immunity under the *Noerr-Pennington* doctrine is based on the First Amendment right to petition—a right that is not limited to petitions involving antitrust issues—and because this right extends to petitions filed in the courts (*i.e.*, lawsuits), this immunity also applies in other contexts."); *see also, e.g.*, *Howard v. Country Club Estates Homeowners Ass'n*, 2010 WL 11651695, at *4–5 (M.D. Ga. Mar. 29, 2010) (noting "the *Noerr-Pennington* doctrine . . . protect[s] the speech of private individuals who petition local governments to rezone areas or seek to influence legislative action against a specific entity"); *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (applying *Noerr-Pennington* doctrine in land use case).  The doctrine does not require that a petitioner have altruistic

motives of any kind.  "That a private party's political motives are selfish is irrelevant: *Noerr* shields [from liability] a concerted effort to influence public officials regardless of intent or purpose." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (internal quotation marks and citation omitted).

Defendants made each of the allegedly false statements during the public zoning process and/or in litigation related to that process. Defendants have a First Amendment right to influence legally public officials and their decisions regarding Plaintiff's zoning application.  That right protects them from liability for the conduct.  *See Omni Outdoor Advert.*, 499 U.S. at 384 (holding party's petitions to local governments regarding zoning changes were immune from liability); *Empress LLC v. City & Cty. of San Francisco*, 419 F.3d 1052, 1056–57 (9th Cir. 2005) (affirming dismissal of zoning dispute on *Noerr-Pennington* grounds).

Plaintiff acknowledges Defendants normally "would be 'immune from [] liability for engaging in conduct (including litigation) aimed at influencing decision-making by the government.'"  (Dkt. 19 at 8–9 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014).)  It argues, however, that the "sham" exception to *Noerr-*

*Pennington* applies.  This exception "encompasses situations in which persons use the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Omni Outdoor Advert.*, 499 U.S. at 380 (emphasis omitted).  "A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *Id.*  That is a narrow exception and requires a party relying on it to prove the petitioning activity was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).  The existence of probable cause to file legal action or petition the government—that is, a reasonable belief there is a chance a claim may be held valid—precludes a finding of sham litigation.  *Id.* at 62–63.

It remains unclear whether Plaintiff bears the burden of pleading inapplicability of *Noerr-Pennington* immunity.  If it is an affirmative defense, a plaintiff has no obligation to plead around it in the complaint.  Rather, a defendant seeking to apply an affirmative defense at the pleading stage must show that defense applies on the face of the

complaint. *See Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("A complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint."). Some courts have applied this principle to *Noerr-Pennington* immunity. *See Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 359 (4th Cir. 2013) ("the *Noerr-Pennington* doctrine is an affirmative defense," meaning it does not apply at the pleading stage "unless all facts necessary to the affirmative defense clearly appear on the face of the complaint"); *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000) ("[T]he *Noerr-Pennington* doctrine should be raised as an affirmative defense."). The Eleventh Circuit, however, has held otherwise. It has explained (albeit in an antitrust case) that "*Noerr-Pennington* immunity is not merely an affirmative defense" and a Plaintiff must "allege facts sufficient to show that *Noerr-Pennington* immunity did not attach to [defendant's] actions." *McGuire Oil Co.*, 958 F.2d at 1559 n.9 (11th Cir. 1992); *see also James D. Hinson Elec. Contracting Co. v. AT & T Servs., Inc.*, 2014 WL 1118057, at *5 (M.D. Fla. Mar. 20, 2014) ("As with [*Noerr-Pennington*] immunity generally, the

11

burden is on the party seeking to impose liability to show that the sham exception applies.").

The Court follows the Eleventh Circuit's interpretation of the doctrine and concludes Plaintiff must allege facts sufficient to establish the sham exception to *Noerr-Pennington* immunity. The parties seem to agree with this legal conclusion. Defendants say Plaintiff has the burden to allege the Superior Court petition was baseless and failed to do that because it did not allege Defendants "lacked a reasonable belief that any of [their] claims might be held valid by the Chatham County court." (Dkt. 18 at 8–9.) Plaintiff does not seek to cast off this burden but instead argues "the facts alleged in the First Amended Complaint establish the sham exception," that it "has properly pled [Defendant] was engaged in sham litigation," and that it has "sufficiently alleged" a lack of probable cause by Defendants. (Dkt. 19 at 2, 11-12.)

Plaintiff alleges Defendants had a bad motive in filing the petition, saying Defendants did so with a "deceptive purpose" to "derail" and "sabotage" Plaintiff's plan to develop the property to maintain their own "economic advantage." (Dkts. 11 ¶¶ 41, 47.) Plaintiff adds to this an allegation that one of Defendants' affiliates filed a similar petition a year

before in a different court involving a different project.  (*Id.* ¶¶ 53-55.)
They claim the petition filed against it and the prior, unrelated petition
show "a continuous and ongoing practice" by Defendants of "filing
frivolous actions [as] part of a broader campaign . . . to manipulate the
housing market to Defendants' benefit by improperly monopolizing its
interests." (*Id.* ¶ 56.)

But mere claims of self-interest or even nefarious motives would
not be enough to plead application of the "sham" exception.  Instead,
Plaintiff must allege Defendants were "not at all serious about the object
of [its] petition but engage[d] in the petitioning activity merely to
inconvenience" Plaintiff. *McGuire Oil*, 958 F.2d at 1559.  Plaintiff does
not allege that.  To the contrary, Plaintiff alleges Defendants were, in
fact, seeking to prevent rezoning of the property in an effort to protect its
own economic interests.

Plaintiff also alleges in the amended complaint that "Defendants
knew that *certain* claims and allegations made in [their petition] were
misrepresentations not supported by the material facts necessary to

support [their] allegations." (Dkt. 11 ¶¶ 37–39 (emphasis added).)[4] They cite only two items in the Superior Court petition to support that allegation. Plaintiff first alleges Defendants' contentions in the petition that the City of Savannah failed to "follow its own zoning procedures, ignored mandatory zoning requirements and the Subject Property's future land use designation, and deprived [itself] of key information relating to Vista's proposed development of the Subject Property" were "bald-faced untruths." (*Id.* ¶ 38.) Plaintiff pleads no specific facts to support this conclusory statemen, making it insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

---

[4] Plaintiff does not include similar allegations about Defendants' statements at the planning meeting or in the letter to the City. Indeed, their arguments of "sham" litigation focus only on the Superior Court petition. (Dkt. 19 at 13-14.) The Court thus considers Plaintiff to have abandoned any argument against *Noerr-Pennington* immunity as to Defendants' first two actions. But they would not be actionable anyway, as the commission approved Plaintiff's petition on the day of the meeting and Plaintiff does not allege Defendants' letter to the City delayed the City's approval by even a day. In other words, Plaintiff does not allege these two acts were shams or had any impact on their zoning application.

Consideration of Defendants' Superior Court petition exposes the conclusory nature of Plaintiff's sham allegation.   In the petition, Defendants included specific allegations to back up their overarching allegations of the City's malfeasance.  Defendants' petition, for example, identified a newly adopted rezoning plan for the area (referred to as "NewZO") that it claimed precluded Plaintiff's development; explained how Plaintiff's proposed development allegedly violated NewZO; explained how the proposed development violated the City's existing zoning (referred to as "BC Zone") in regards to density and residential only occupancy; cited the notice provision Defendants claimed the City violated; and explained how the City's published notice was deficient (Dkt. 11-6 ¶¶ 12-20.)  Plaintiff does not specifically allege Defendants knew those allegations were untrue at the time or explain how the allegations were "bald-faced" lies.  Plaintiff does not allege, for example, that no reasonable person would believe Defendants might prevail on the claim Plaintiff's plan violated NewZO and BC Zone, let alone explain how Defendant's allegations are wrong.  Plaintiff's bare-bones allegation that Defendants' assertions were "bald-faced untruths" do not allege plausibly

Defendants lacked a reasonable belief at least some portion of their claim might be held valid by the Chatham Superior Court.

As its second basis for attacking the petition, Plaintiff focuses on Defendant's claim in the petition that Defendants "will suffer substantial damage" from the City decision to rezone the property. (Dkt. 5 ¶ 3.) Plaintiff alleges Defendants' petition was a sham because Defendants "never specified the actual impact or damages it would allegedly suffer" but rather "hinged its allegations on a vague and generic 'diminution in value' that lacks any specificity or evidentiary support." (*Id.* ¶ 39.) The Court need not accept that factual allegation because it is verifiably untrue. In the Superior Court petition, Defendants explained that one of them was the owner of an apartment complex located directly across the road from the property Plaintiff wanted to rezone and that the proposed rezoning would permit the addition of "hundreds of new residents" into the area. (Dkt. 11-6 ¶ 22.) Defendants further alleged the value of their property would be diminished because the City granted the application without first considering whether there were adequate public facilities (including streets and areas of ingress and egress to and from the new

property) to serve the new residents. (*Id.*)   And again, Plaintiff does not allege no reasonable person would accept this argument.

Plaintiff may believe that Defendants' allegations in the Superior Court petition were baseless, utterly devoid of probable cause, or objectively unreasonable.  But beyond conclusory allegations, they allege no facts to establish that.  They do not challenge the zoning ordinances identified by Defendants as unapplicable, allege the City provided proper notice, or explain why Defendants' core allegation in the petition that the City failed to follow mandatory zoning requirements was a sham.  So, *Noerr-Pennington* immunity bars Plaintiff's claims.  The same ruling applies to the other two alleged misrepresentations as Plaintiffs does even less to explain how Defendants' statement at the commission meeting or October 28 letter to the City were "shams."

### B.   Motion to Dismiss for Failure to State a Claim

Even if *Noerr-Pennington* immunity did not apply, Plaintiff's claims still must be dismissed because Plaintiff fails to plead them with sufficient particularity.   And even if the complaint was sufficiently specific, it still does not state all the necessary elements of its RICO and fraud claims.

### 1.   Legal Standard

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  At the motion-to-dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  Even so, a complaint offering mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient.  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 555).  Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This so-called "plausibility standard" is not a probability requirement.  But the plaintiff must allege enough facts so that it is reasonable to expect that discovery will lead to evidence supporting the claim.  *Id.*

Civil RICO and fraud claims are governed by a more exacting standard than that found in Rule 12(b)(6). *See* Fed. R. Civ. P. 9(b); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) ("[S]ubstantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard."). Rule 9(b) says "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See also Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity.").

To comply with Rule 9(b), a plaintiff bringing civil RICO and fraud claims must allege:

> (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud.

*Id.* at 1316–17. "Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing &*

*Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008).

A false representation "must relate to an existing or pre-existing fact." *Tri-State Consumer Ins. Co. v. LexisNexis Risk Sols., Inc.*, 823 F. Supp. 2d 1306, 1319 (N.D. Ga. 2011) (internal quotation marks and citation omitted). "[G]eneral commendations or mere expressions of opinion, hope, expectation and the like" are not misrepresentations of pre-existing facts. *Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1171 (11th Cir. 1997) (internal quotation marks and footnote omitted). And an alleged "misrepresentation as to a matter of law is a statement of opinion only." *Lakeside Invs. Grp., Inc. v. Allen*, 559 S.E.2d 491, 450 (Ga. Ct. App. 2002) (internal quotation marks and citation omitted).

### 2. Plaintiff Fails to Satisfy Rule 9(b)

Plaintiff's allegations—accepted as true—do not adequately plead fraud. With respect to Defendants' statement at the commission meeting, Plaintiff simply says that "false statements occurred during the [meeting] when [Defendants] reported that 'we do not object at this time.'" (Dkt. 11 ¶¶ 82, 88.) It offers no further explanation for its allegation that this statement was false. Plaintiff, for example, does not

20

specifically allege that *at that moment* Defendants objected to the proposed rezoning.  In fact, Plaintiff admits Defendants did not actually object until nearly a month later.  (*Id.* ¶ 31.)  And Plaintiff concedes that at the meeting, Defendants actually said that, while they were not objecting at that time, they "would like more time to understand what this project would entail."  (*Id.* ¶ 26.)  So that Defendants (having had more time) later objected does not suggest their statement at the meeting was false.   Plaintiff's allegation about the commission meeting is insufficient to sustain a RICO or fraud claim.

Its allegations about Defendants' October 28, 2021 letter to the City of Savannah fare no better.  Plaintiff refers to that letter as part of Defendants' scheme or as a false statement.  (Dkt. 11 ¶¶ 82, 88, 91, 98.)  In the factual allegations of the amended complaint, Plaintiff says that, in the letter, Defendants alleged the City had inadequate information to approve Plaintiff's application and would be abusing its zoning power if it did so.  (*Id.* ¶ 32.)  Plaintiff does not even say either of these allegations were false, let alone explain why.  (*Id.*)   In its Georgia RICO claim, Plaintiff merely says the letter contained "false statements."  (*Id.* ¶ 82.)  Should the Court assume the reference to having inadequate information

21

was a lie?  And, if so, what made it a lie?  Or is the alleged lie about whether the City would be abusing its power to grant Plaintiff's application?  Clearly the mere statement that something is false does not satisfy Rue 9(b).  Plaintiff's fraud count includes one bit of clarity: an allegation the letter falsely stated the City abused its power in granting the application.  (*Id.* ¶ 133.)  But that merely identifies the second statement as the alleged lie, without providing any allegation as to why the statement was false.

Any review of the October 28 letter shows the gross inadequacy of Plaintiff's fraud allegations regarding it.  The letter is five pages.  (Dkt. 11-5.)  Defendants start by outlining five reasons they oppose Plaintiff's rezoning request: alleged lack of detail regarding the impact the new development would have on local residents and traffic patterns; lack of specificity regarding the proposed development; incompatibility with existing apartment complexes in the area; the potential for diminution in the value of Defendants' property; and subversion of existing zoning preference for mixed-use development in the area.  (*Id.*)  Plaintiff does not identify one of those representations was false.  Defendants next outlined the standards the City must use to review zoning applications

22

and the determinations it was required to make before approving Plaintiff's application. (*Id.* at 3.) Defendants highlighted the City's prior commitment to mixed-use developments in the area rather than stand-alone multi-family apartments like Plaintiff proposed to build. Defendants then listed five things they thought the City had to consider in deciding Plaintiff's application. (*Id.* at 5.) Plaintiff does not allege one of those statements was false. Defendants then argued the City did not have enough information to make a decision, particularly in regards to the number of driving-aged people who would reside in the proposed development; the locations of ingress and egress; and the ability of existing public services (including roads, schools, emergency facilities and utilities) to support the additional residents. (*Id.* at 5.) Plaintiff does not identify those allegations as false or explain how any one of them was incorrect. Defendants concluded the letter by alleging that, were the City to approve the application without addressing the concerns Defendants raised in the letter, the City would be exercising a "manifest abuse of [its] zoning power." (*Id.* at 5-6.) Plaintiff's simple allegation that this final statement was false comes nowhere near established pleading standards.

Plaintiff has the same problem with its allegations about Defendants' petition in the Chatham court. The Court has already discussed, in regards to *Noerr-Pennington* immunity, the inadequacy of Plaintiff's conclusory allegation the petition included "bald-faced untruths." For those same reasons, the Court concludes that allegation fails to satisfy Rule 9(b)'s pleading standards.

Plaintiff says it "allege[d] with specificity . . . the statements made, when they were made, and to whom they were made," and "included exhibits of the false statements." (Dkt. 19 at 15.) But Plaintiff's complaint—aside from identifying the specific statement Defendants allegedly made at the planning commission meeting—says only in conclusory fashion that "false statements were made in [Defendants'] October 28, 2021 letter and its December 9, 2021 Petition for Writ." (Dkt. 11 ¶ 82.) As just noted, Plaintiff does not identify what statements within the letter or petition are false, and the exhibits do not facially demonstrate such falsity. Plaintiff cannot survive a motion to dismiss by "[s]imply providing examples of the alleged fraudulent conduct" without identifying a "single specific misrepresentation." *Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 901 (11th Cir. 2020).

Beyond Plaintiff's failure to adequately identify the allegedly false statements, Defendants' October 28 letter and Superior Court petition cannot constitute factual misrepresentations because—as alleged—they are legal opinions as to the adequacy of the City's adherence to its procedures or claims about Defendants' own potential damages. Indeed, the allegations of Defendants' petition with which Plaintiff specifically takes issue—that the City did not have enough information to approve Plaintiff's application and that Defendants suffered special damages—all have to do with Defendants' legal argument that the City failed to follow its own zoning process and that Defendants would incur legal injuries due to the devaluation of their property. (Dkt. 11 ¶¶ 38–39.) Plaintiff does not explain how these opinions constitute *factual* misrepresentations. And as noted above, Plaintiff fails to allege that Defendants' claims were baseless. So, Plaintiff cannot use the letter or petition to sustain its claims. *See Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1320 (N.D. Ga. 2021) ("'[A] representation or expression of opinion as to a matter of law . . . is not actionable unless there is a fiduciary relationship between the parties[.]'") (emphasis omitted; quoting *Clinton*

*v. State Farm Mut. Auto. Ins. Co.*, 138 S.E.2d 687, 691 (Ga. Ct. App. 1964)).

Nor do Plaintiff's allegations provide any factual basis upon which the Court could conclude that any specific act of any specific Defendant is indictable for mail or wire fraud—the bases for Plaintiff's RICO claims. In regards to its mail fraud allegations, Plaintiff says Defendants "deposited, sent, or electronically transmitted communications or documents for the purpose of executing" the alleged scheme. (Dkt. 11 ¶ 95.) As a "for instance," Plaintiff refers to the "pleadings and communications sent to the Chatham County Superior Court." (*Id.*) There are two problems with this. First, Plaintiff does not actually allege the use of the United States Postal Service or any private or commercial interstate carrier—a necessary element for mail fraud. 18 U.S.C. § 1341. Second, Plaintiff's allegation fails to allege which Defendant committed the alleged act.

As to wire fraud, Plaintiff alleges Defendants used interstate wires as part of their misconduct. (Dkt. 11 ¶ 105.) Plaintiff identifies "[w]ires to the Chatham County Superior Court," "[w]ires between Defendants," and "text, emails and telephone communications." (*Id.*) This is the first

and only reference in the entire complaint to texts, emails, telephone communications, or wires between Defendants.  Plaintiff makes no effort to identify who transmitted what, or when, or with whom.  The Eleventh Circuit has held that nearly identical conclusory allegations were insufficient to "conclude that any specific act of any specific Defendant is indictable for mail or wire fraud." *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1381 (11th Cir. 1997).

Finally, even if Plaintiff properly identified Defendants' misstatements—or any factual basis for mail or wire fraud—Plaintiff fails to specifically "inform each defendant of the scope of his or her participation in the alleged fraud" because it fails to allege any fact showing the relationship between the various entities it has sued.  *See Ambrosia*, 483 F.3d at 1317.  Plaintiff alleges Defendant West Shore Walden LLC acted "at the direction of West Shore, LLC and/or John Does 1–3." (Dkt. 11 ¶ 80.)  But along with not explaining what "at the direction of" actually entails, Plaintiff does not allege a single fact showing the relationship between or the structure of these entities.  Instead, Plaintiff impermissibly "lump[s] together all of the defendants." *Ambrosia*, 482 F.3d at 1317.  And Plaintiff cannot satisfy Rule 9(b) by "assert[ing] that

an unnamed and unidentified individual" may have made false representations or directed another to engage in fraudulent conduct. *See United States ex rel. Lewis v. Walker*, 2007 WL 2713018, at *8 n.10 (M.D. Ga. Sept. 14, 2007).

There are so many problems with Plaintiff's fraud allegations. The Court thus dismisses the RICO and fraud claims under Rule 9(b). *Mathis v. Velsicol Chemical Corp.*, 786 F. Supp. 971, 976–77 (N.D. Ga. 1991).

### 3. Plaintiff Fails to Plead the Elements of Its Federal and State RICO Claims

Even if Plaintiff's allegations were sufficiently specific to meet its obligations under Rule 9(b), Plaintiff cannot maintain its federal and state RICO claims under Rule 12(b)(6) because it has not pled the required elements. A private plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). "The federal and Georgia racketeering acts are 'essentially identical,' meaning the failure to state a claim under the federal act

28

warrants dismissal under the Georgia Act." *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1342 (11th Cir. 2017) (quoting *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 n.1 (11th Cir. 2014)).

Plaintiff has not adequately alleged an enterprise. To plead an association-in-fact enterprise as Plaintiff seeks to do here, a plaintiff must allege a group of people or entities share three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Id.* "The Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355 (11th Cir. 2016). So in regards to the enterprise element, a plaintiff must allege "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *DJ Lincoln Enters., Inc. v. Google, LLC*, 2022 WL 203365, at *2 (11th Cir. Jan. 24, 2022) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). This applies in the case of corporate defendants. A "defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees when those

individuals are operating in their official capacities for the corporation." *Id.*

The Eleventh Circuit's opinion in *DJ Lincoln Enterprises* is instructive. In that case, a plaintiff sued Google for RICO violations and alleged Google was part of an enterprise that included "Alphabet, Inc., its CEO and Board of Directors, YouTube, its CEO and Board of Directors, and outside third-party engineers, search engine optimizers, and digital sales marketing consultants . . . who operated with a common purpose." *See DJ Lincoln Enters.*, 2022 WL 203365, at *2. But Plaintiff failed to allege how Alphabet, Inc. (the parent company of Google), YouTube (which is owned by Google), or any of the individuals associated with those organizations, operated outside their official capacity. *Id.* The Eleventh Circuit thus determined plaintiff failed to allege those entities were distinct from Google for RICO purposes. *Id.*

Plaintiff has the same problem here. It admits it names only five "persons in its First Amended Complaint: West Shore Walden, West Shore, and John Does Numbers 1–3." (Dkt. 19 at 27.) But Plaintiff does not treat Defendants in any distinct manner. Indeed, Plaintiff alleges that Defendants "were the agents, servants, partners, predecessors in

interest, and joint venturers of each other, and were at all times operating and acting with[in] the purpose and scope of said agency, service, employment, partnership, joint enterprise, and/or joint venture." (Dkt. 11 ¶ 6.)  Plaintiff also claims West Shore Walden committed fraud "*acting at the direction of* West Shore, LLC and/or John Does 1–3." (Dkt. 11 ¶ 80 (emphasis added).)  And the John Doe Defendants do not change the equation—Plaintiff alleges they are "executives, officers, in-house attorneys, shareholders[,] members, and/or other agents of Defendants West Shore and West Shore Walden."  (*Id.* ¶ 4.)  Plaintiff thus fails to plead Defendants are separate from the alleged enterprise.

Plaintiff also does not plead adequately a pattern of racketeering activity.   Proving a pattern means showing "at least two acts of racketeering activity."  18 U.S.C. § 1961(5); O.C.G.A. § 16-14-3(4)(A); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985) ("[W]hile two acts are necessary, they may not be sufficient[.]").   In addition, the plaintiff must "plausibly allege that the defendant is engaged in criminal conduct of a continuing nature."  *Cisneros*, 972 F.3d at 1216 (internal quotation marks and citation omitted).  This requires pleading a "'series of related predicates extending over a substantial

period of time'" or "'the threat of continuity.'"  *Id.* (quoting *H.J. Inc. v. Nw. Bell Tele. Co.*, 492 U.S. 229, 242 (1989)).

Plaintiff alleges the following predicate acts support its RICO claims: (1) Defendants' allegedly making false statements more than twice "in a matter within the jurisdiction of a government agency" in violation of Georgia law;[5] (2) mail fraud; and (3) wire fraud.  (Dkt. 11 ¶¶ 86–112.)  The Court has already concluded that Plaintiff failed to plead false statements with sufficient particularity.  But even if it had, they cannot establish a pattern of racketeering activity because they did not extend over a substantial period of time and they fail to show the threat of open-ended continuity.[6]

---

[5] Plaintiff alleges Defendants violated O.C.G.A. § 16-10-20—which prohibits making false statements within the jurisdiction of a government agency—by lying to the City and to the Chatham Superior Court.  (Dkt. 11 ¶¶ 86–88.)  Defendants say these alleged violations cannot count as predicate acts because—as violations of *Georgia* law—they do not constitute *federal* racketeering. (Dkt. 18 at 18.)  Defendants' position is questionable.  The Eleventh Circuit has in dicta called violating O.C.G.A. § 16-10-20 a "predicate offense." *Jannuzzo v. Glock, Inc.*, 721 F. App'x 880, 885 (11th Cir. 2018).

[6] Defendants also argue that Plaintiff's mail and wire fraud allegations fail to show a pattern of racketeering activity because Defendants' letter to the City and their petition are "routine litigation activities" that the "overwhelming weight of authority" holds cannot constitute predicate acts of mail or wire fraud.  (Dkt. 18 at 20–21.)  The Court need not decide

Courts "measure a 'substantial period of time' in years, not in weeks." *Cisneros*, 972 F.3d at 1216. The time between the date of the commission hearing (September 21, 2021) and the date on which Defendants dismissed their petition (February 12, 2022) is only five months. (Dkt. 11 ¶¶ 21, 50.) That is insufficient. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1266 (11th Cir. 2004) ("Other circuits have agreed that the substantial period of time requirement . . . cannot be met with allegations of schemes lasting less than a year.").

In arguing otherwise, Plaintiff says the Court should consider its allegation that West Shore Legacy (a non-party) engaged in similar conduct in Florida in April 2020—more than a year before the commission hearing. (Dkt. 11 ¶ 53.) Plaintiff, however, merely insinuates—but does not allege—that West Shore Legacy's actions constitute a predicate act of racketeering. (*Id.* ¶ 53–56.) Indeed, Plaintiff does not claim any of the Florida conduct constitutes a violation of Georgia law, mail fraud, or wire fraud—the only offenses Plaintiff

---

this issue because it finds that, even if Plaintiff's mail and wire fraud allegations could constitute predicate acts, they do not meet the continuity requirement and cannot sustain Plaintiff's federal RICO claim.

expressly alleges are predicate acts. (*Id.* ¶¶ 86–112.) Plus, even including that conduct would only yield about a year and ten months— *i.e.*, from April 2020 through February 2022 (when Defendants dismissed their petition). *See Ferrell v. Durbin*, 311 F. App'x 253, 257 (11th Cir. 2009) (complaint failed to allege continuity "[g]iven the . . . limited time frame [of less than two years], the single scheme and existence of only two victims").[7]

Plaintiff also has not plausibly alleged the threat of open-ended continuity because it did not plead that Defendants' purported criminal acts pose a "'specific threat of repetition extending indefinitely into the future'" or that the criminal conduct was Defendants' "'regular way of doing business.'" *Jackson*, 372 F.3d at 1265 (quoting *H.J. Inc.*, 492 U.S.

---

[7] To avoid this result, Plaintiff says the Court should count the time since Defendants dismissed their petition, including "through today," because "Defendants continue to reap the benefits of their Zoning Scheme." (Dkt. 19 at 20.) But Plaintiff does not allege that Defendants have engaged in *any* conduct since dismissing their petition. And it cites no authority for the proposition that a court can include time after the final act of alleged racketeering simply because the defendant may continue to benefit in some way from its prior acts. It would be strange and unfair to say an entity is continuing to engage in a pattern of racketeering activity when it is, in fact, doing nothing. That would be even stranger here when the alleged impact is the Plaintiff's voluntary decision to delay its purchase of the property.

at 242).  First, Plaintiff says it has alleged the threat of repetition because Defendants may refile their petition, thereby prolonging Plaintiff's inability to develop the property and leaving it "in a six-month purgatory."  (Dkt. 19 at 20.)  But the Georgia statute Plaintiff claims gives Defendants the power to refile their petition—O.C.G.A. § 9-11-41(a)—says "[a] dismissal under this subsection is without prejudice, except that the filing of a second notice of dismissal operates as an adjudication upon the merits."  So, under no circumstances could Defendants file and dismiss their petition indefinitely to keep Plaintiff from developing the property.  So that statute protects against any threat of continuity.  And while Plaintiff claims Defendants' filing of the Florida lawsuit and the Chatham petition shows "a continuous and ongoing practice of filing frivolous actions . . . to manipulate the housing market to Defendants' benefit," (Dkt. 11 ¶ 56), Plaintiff cites no authority—and the Court can find none—suggesting that filing two (even frivolous) lawsuits is sufficient to show a regular way of doing business.

Finally, Plaintiff cannot show that any alleged racketeering act proximately caused an injury to its business or property.  The federal RICO statute provides a private right of action only to those "injured in

[their] business or property by reason of a violation" of the statute.  18 U.S.C. § 1964(c).  "[T]he phrase 'business or property' . . . retains restrictive significance." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).  It does not include intangible losses. *See Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352, 1361 (11th Cir. 2011) (requiring an "economic injury" arising from defendant's actions); *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) ("[A] showing of 'injury' requires proof of concrete financial loss, and not mere 'injury to a valuable intangible property interest.'") (citation omitted).  "It does not suffice . . . that the object of the fraud may *become* property in the recipient's hands; . . . the thing obtained must be property *in the hands of* the victim." *Cleveland v. United States*, 531 U.S. 12, 15 (2000) (emphasis added).

Plaintiff's damages theory flows from Defendants' alleged impairment of intangible property rights—that is, the rights Plaintiff would enjoy from a zoning permit.  (Dkt. 11 ¶ 77 (alleging Defendants caused the "taking of [Plaintiff's] ability to purchase and develop the Subject Land").)  Plaintiff does not allege a factual basis showing the object of Defendants' fraud was to obtain Plaintiff's money or property—

rather, Plaintiff claims Defendants intended to "delay or derail competitor projects" by filing "frivolous zoning challenges." (*Id.* at 2.)  In other words, Plaintiff does not say Defendants' fraud damaged property in its hands, but some intangible benefits it would have reaped had it gone forward with the purchase and actually completed construction of the proposed development.  Specifically, Plaintiff says it suffered money damages stemming from "delay in closing on the Subject Property," "delay in paying third party vendors," "delay in development and construction," "procurement of professional consultants in an amount to be determined," "additional costs incurred by the Subject Property's seller," and "loss in operating income." (Dkt. 11 ¶ 58.)  While phrased as damages Plaintiff has already incurred out-of-pocket, each of these items seem to identify things that have not yet occurred.[8]  At bottom, then,

---

[8] For example, that there has been a delay in paying vendors and in development and construction suggests those things have not yet happened (and thus Plaintiff has not spent any money on them).  And loss of operating income seems to mean that Plaintiff is delayed in making money from renting units after it completes construction of the apartment complex.  While a delay in closing or additional costs incurred by the property's seller might mean actual costs (*e.g.*, something like payment for an option to purchase the property), that is not clear from the amended complaint.  In any event, Plaintiff does not allege that the

Plaintiff really complains that it had expected to make money from a business opportunity that it decided to delay as a result of Defendants' conduct. That is not a cognizable RICO injury. *See Roberts v. The Scott Fetzer Co.*, 2010 WL 3937312, at *10 (M.D. Ga. Sept. 30, 2010) (noting that a party's expectation cannot constitute "business or property" under RICO).[9]

In arguing otherwise, Plaintiff claims it properly alleged damages because it alleged "Defendants' actions have directly caused extensive and tangible damage to [Plaintiff]," and because it pled "that it was

---

property itself (of which Plaintiff arguably does not yet have an interest) was damaged in any way.

[9] Defendants argue Plaintiff's Georgia RICO claim separately fails because Plaintiff did not allege that Defendants acquired an interest in an enterprise through racketeering activity. (Dkt. 18 at 29 (citing O.C.G.A. § 16-4-14(a).) Rather, Plaintiff "alleges that Defendants tried to sabotage [Plaintiff] by challenging [Plaintiff's] rezoning—not that the racketeering activity somehow created or maintained an enterprise." (*Id.*) Plaintiff does not meaningfully engage with this argument, instead repeating its assertion that it properly pled Defendants defrauded it of property. (Dkt. 19 at 29.) Plaintiff's Georgia RICO claim thus also fails on this front. *See Carden v. Town of Harpersville*, 2017 WL 4180858, at *10 (N.D. Ala. Sept. 21, 2017) (dismissing claim under federal counterpart to O.C.G.A. § 16-4-14(a) where plaintiff failed to indicate "how Defendants maintained or acquired an interest in the alleged enterprise through any of the purported racketeering activities").

defrauded of funds and the property." (Dkt. 19 at 25–26.) But Plaintiff cannot turn its intangible losses into tangible ones just by saying so. Similarly, the Court need not consider Plaintiff's conclusory allegations that it was defrauded of money and property (*Id.* ¶¶ 72, 100, 114, 121), because they are unsupported by any factual assertions. *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal."); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1268 (M.D. Ala. Sept. 19, 2019) ("Conclusory allegations are those that express 'a factual inference without stating the underlying facts on which the inference is based.'") (citation omitted).

Finally, even if Plaintiff properly alleged an injury, its federal RICO claim fails for lack of proximate cause. "[P]leading a civil RICO claim requires that plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity . . . was the but-for *and* proximate cause of the plaintiffs' injuries." *Ray*, 836 F.3d at 1349 (emphasis in original). "The connection between the racketeering activity and the injury can be neither remote, purely contingent, nor

indirect." *Id.*  Notably absent from Plaintiff's complaint is an allegation that Defendants' petition reversed or even froze the City's rezoning decision.   Rather, Plaintiff claims Defendants "*inadvertently* forced [Plaintiff] to halt its purchase of the Subject Property and halt development." (Dkt. 11 ¶ 83 (emphasis added).)   In other words, it appears Plaintiff voluntarily chose to stop its purchase because of a *risk* the Chatham Superior Court might reverse the City's zoning decision. *See Maddox v. S. Eng'g Co.*, 500 S.E.2d 591, 594 (Ga. Ct. App. 1998) (RICO claim failed where plaintiff did not "show that his injury flowed directly from the defendant's misrepresentations to state agencies, not merely that his injury was an eventual consequence of the misrepresentations").

There is no reason to think it will.  By all accounts, Plaintiff's efforts to rezone the property sailed through the necessary channels.   The planning commission approved Plaintiff's petition by a twelve to nothing vote less than one month after Plaintiff filed the application.  (Dkt. 11 ¶¶ 18, 29.)  The City considered the application at a council meeting the next month and approved the application days later, despite Defendants' objections in the October 28, 2021 letter. (*Id.* ¶¶ 31–34.)  Indeed, Plaintiff

does not claim Defendants slowed the process in any way.  Plaintiff did not learn of Defendants' appeal to the Chatham Superior Court until at least two months later.  (*Id.* ¶¶ 35, 36.)  It did not buy the property during that time.  Nor did it purchase the property after that appeal was (relatively) quickly dismissed.  All of this is to demonstrate that, by Plaintiff's own admissions, it made a business decision that, in the light of Defendants' opposition to the rezoning application, it would voluntarily delay its purchase of the property.

Because Plaintiff has not plausibly alleged an enterprise, a pattern of racketeering activity, damages, or causation, its RICO claims fail.[10]

### 4. Plaintiff Also Fails to Plead the Elements of Its Fraud Claim

That leaves only Plaintiff's fraud claim.  Under Georgia law, a plaintiff asserting fraud must show: "'a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from

---

[10] Plaintiff's claim that Defendants conspired to violate the Georgia RICO statute also fails because "'[t]he pattern of racketeering activity on which [Plaintiff] predicate[s] [its] conspiracy counts relies on the same . . . allegations as the substantive RICO claims.'"  *A.B. v. H.K. Group of Co., Inc.*, 2022 WL 467786, at *5 (N.D. Ga. Feb. 9, 2022).

acting, justifiable reliance by plaintiff, and damage to plaintiff.'" *Bowden v. Med. Ctr., Inc.*, 845 S.E.2d 555, 563 n.10 (Ga. 2020) (citation omitted).

As an initial matter, Defendants argue that Plaintiff cannot bring a fraud claim for alleged misrepresentations in their petition because their statements in the petition are privileged. (Dkt. 18 at 32 (citing O.C.G.A. § 51-5-8).) They say that Plaintiff's claims instead are covered by O.C.G.A. § 51-7-85, which is the "exclusive remedy for abusive litigation" in Georgia. (*Id.*) It appears that no court has squarely decided whether O.C.G.A. § 51-7-85 always precludes fraud claims based on representations made in a complaint or petition. Some courts, however, have held the statute bars RICO claims "based on the use of court filings to threaten or extort victims." *See Murphy v. Farmer*, 176 F. Supp. 3d 1325, 1348 (N.D. Ga. 2016); *see also Slone v. Myers*, 653 S.E.2d 323, 327 (Ga. Ct. App. 2007) (plaintiff's claim that dispossessory action by landlord violated RICO in reality was "abusive litigation claim"). Extending that reasoning to fraud claims makes good sense given that RICO claims "are essentially a certain breed of fraud claims." *Pages Morales*, 482 F.3d at 1316. Indeed, Plaintiff's entire theory surrounding the Superior Court petition is that Defendants filed abusive litigation to injure Plaintiff. So,

Defendants' petition is privileged and could only serve as a basis for liability—if any—under Georgia's abusive litigation statute, not fraud.

Even if those statements were not privileged, Plaintiff fails to plead a false representation.  As noted above, Plaintiff does not allege that Defendant's representative's statement at the commission meeting was false at the time it was made; Defendants' letter to the City merely stated their legal opinion regarding the City's zoning decision; and Plaintiff fails to plead that Defendants' petition was entirely baseless.  Again, the letter and petition include only Defendants' thoughts (based on their interpretation of the law) that the City did not follow its own process in approving Plaintiff's application and that they suffered some damage as a result.  *See Am. Gen. Life & Acc. Ins. Co. v. Ward*, 530 F. Supp. 2d 1306, 1310 (N.D. Ga. 2008) (dismissing fraud claim where plaintiff failed to plead any false representations).  And even if Plaintiff had pled a false representation, it states only in conclusory fashion that Defendants "intentionally and falsely misrepresented" information to the City and the Chatham Superior Court. (Dkt. 11 ¶¶ 133, 135, 145, 147.)  This type of conclusory assertion unsupported by factual allegations is not enough to plead that Defendants knew their representations were false.  *See*

*Turk v. Morris, Manning & Martin, LLP*, 593 F. Supp. 3d 1258, 1301 (N.D. Ga. 2022) ("Plaintiff's allegations regarding Defendants' knowledge of the fraud 'cannot be merely conclusory and unsupported by and factual allegations.'") (citation omitted); *cf. Plymouth Cty. Retirement Sys. v. Carter's Inc.*, 2011 WL 13124501, at *20 (N.D. Ga. Mar. 17, 2011) (dismissing securities fraud claims where allegations of scienter "rest almost entirely on motive and opportunity").[11]

Next, Plaintiff fails to show justifiable reliance.  It is a "familiar precept that actionable fraud must be based upon a misrepresentation made *to* the defrauded party, and relied upon *by* the defrauded party." *Fla. Rock & Tank Lines, Inc. v. Moore*, 365 S.E.2d 836, 837 (Ga. 1988) (emphasis in original).  Here, Defendants allegedly made representations to the City and to the Chatham Superior Court—not to Plaintiff.  And, as already explained, the commission and City rapidly approved Plaintiff's

---

[11] Plaintiff's theory is that because Defendants knew the content of Plaintiff's zoning application, they "knew that certain claims and allegations made in [their petition] were misrepresentations not supported by the material facts." (Dkt. 11 ¶ 37.)  But again, Defendants' opinion as to the legal sufficiency of Plaintiff's application—and its representations of that opinion to the City and the Chatham Superior Court—are not actionable misrepresentations of fact.

rezoning application despite Defendants' opposition.  Plaintiff does not allege it, the City, or the Superior Court relied on Defendants' alleged misrepresentations in taking or failing to take any action.

Plaintiff says this case does not "fit neatly" within the traditional precept of fraud and is still actionable because Defendants' alleged scheme "succeeded in using misrepresentations to government officials, as [a] conduit to bring [Plaintiff's] project to a halt."  (Dkt. 19 at 34.) Plaintiff's allegations do not bear that out.   Plaintiff alleges that Defendants' petition caused the City to "use[] its power" to "*inadvertently* force[] Plaintiff to halt its purchase . . . and development." (Dkt. 11 ¶ 83 (emphasis added).)  Plaintiff, however, does not explain how any decision by the City—regardless of whether made under the inducement of Defendants—caused it to stop its plans for the property.  Indeed, Plaintiff does not allege that the City reversed, suspended, or even threatened to rescind its approval of Plaintiff's rezoning application.  Thus, Plaintiff fails to explain how Defendants induced the City "'to act in some manner *on which [Plaintiff] relie[d].'"  *UWork.com, Inc. v. Paragon Techs., Inc.*, 740 S.E.2d 887, 898 (Ga. Ct. App. 2013) (emphasis in original; quoting *Fla. Rock*, 365 S.E.2d at 837).

And even if Plaintiff could have relied on Defendants'
representations to third parties, its lack of due diligence precludes its
recovery for fraud.  Under Georgia law, "'[a]bsent a fiduciary or
confidential relationship with the defendant, the plaintiff must exercise
due diligence before relying upon the representations or silence of
another.'" *EduCap, Inc. v. Haggard*, 801 S.E.2d 611, 686 (Ga. Ct. App.
2017) (citation omitted).  Courts do not afford relief "when one blindly
relie[s] on misrepresentations of the other party as to matters of which
he could have informed himself." *Tri-State Consumer Ins. Co.*, 823 F.
Supp. 2d at 1320 (internal quotation marks and citation omitted).
Plaintiff alleges it "relied o[n] the truthfulness of [Defendants']" petition
in deciding to "halt[] all activities related to the" property.  (Dkt. 11
¶ 139.)  That allegation is puzzling given that Plaintiff's entire case is
based on the notion Defendants' petition was a farce and Plaintiff knew
it.  Indeed, Plaintiff said as much when it wrote to Defendants on
January 19, 2022 accusing them of fraud and telling them to drop their
challenge under the threat of litigation.  While blind reliance is not
justifiable as a matter of law, what Plaintiff claims is even worse.

Basically, Plaintiff says it knew Defendants were lying but it relied on their representations anyway.  That is ridiculous.

Finally, Plaintiff cannot show Defendants' alleged misrepresentations caused it any damages.  Plaintiff simply claims it "was damaged" by relying on Defendants' alleged misrepresentations. (Dkt. 11 ¶¶ 139, 148.)  But again, Plaintiff's damages are entirely speculative.  And to the extent those damages exist, they were caused by Plaintiff's voluntary decision to halt purchase and development of the property.[12]

### 5.   Plaintiff's Derivative Claims for Attorneys' Fees and Punitive Damages Must be Dismissed

Because Plaintiff fails to state a claim on the substantive counts, its derivative claims for attorneys' fees and punitive damages must also be dismissed.  *See Gilmour v. Am. Nat'l Red Cross*, 385 F.3d 1318, 1324

---

[12] Plaintiff says in its opposition brief that Defendants' "court action stalled the financing, closing, and development of the Subject property. [Plaintiff] could not simply say to its partners and the seller that the Petition for Writ should be ignored because it was a misrepresentation and then reasonably move forward with development." (Dkt. 19 at 32.) But Plaintiff did not allege as much in its complaint.  *See Mitchell v. Thompson*, 564 F. App'x 452, 458 (11th Cir. 2014) (court will not consider new allegations not included in complaint in response to motion to dismiss).

(11th Cir. 2004) (dismissing claim for attorneys' fees where there was "no underlying claim to support" it); *Lilliston v. Regions Bank*, 653 S.E.2d 306, 311 (Ga. Ct. App. 2007) ("In light of the dismissal of its substantive tort claims, [Plaintiff's] claim for punitive damages was properly dismissed as derivative of those claims.").

### C.   Motion for Sanctions

Defendants ask the Court to sanction Plaintiff by awarding attorneys' fees and costs under Rule 11.  They argue Plaintiff's counsel "filed a complaint that any reasonable attorney would know lacks a reasonable basis in law for the sole purpose of coercing a settlement." (Dkt. 22 at 1.)  Relying nearly entirely on the same arguments they raised in their motion to dismiss, they say Plaintiff's "allegations are nothing more than a thinly-veiled attempt to use this federal court to pressure [Defendants] into dropping [their] constitutionally protected objections to the City's rezoning decision."  (*Id.* at 4.)

Plaintiff says Defendants "are improperly using a sanctions motion to test the legal sufficiency or efficacy of allegations in" its complaint, thereby "improperly using Rule 11 for a second bite at the apple to dismiss this case."  (Dkt. 24 at 1.)  It says its claims "are plainly not

frivolous" and that counsel "made an intensive (and thus reasonable) inquiry into the pleading's factual basis." (*Id.* at 5.) Plaintiff asks the Court to reject Defendants' request for sanctions and instead require Defendants to pay Plaintiff's attorneys' fees incurred in responding to the sanctions motion. (*Id.* at 21.)

### 1.   Legal Standard

Rule 11 sanctions are appropriate:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). In making its determination, a court must examine (1) whether the legal claims or factual contentions are objectively frivolous and (2) if so, whether a reasonable inquiry would have shown that they were frivolous. *Id.* These questions are measured "under the circumstances and what was reasonable to believe at the time" the pleading was submitted. *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (internal quotation marks and footnote omitted).

Rule 11 sanctions are "'an extraordinary remedy, one to be exercised with extreme caution.'" *Bigford v. BESM, Inc.*, 2012 WL 12886184, at *2 (S.D. Fla. Oct. 12, 2012) (quoting *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)). "[T]hey are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law." *Baker*, 158 F.3d at 524. Nor should they be sought merely "to test the legal sufficiency or efficacy of allegations in the pleadings" or "to emphasize the merits of a party's position." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Rather, they are designed to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (internal quotation marks and citation omitted).

"In determining whether a suit is frivolous, 'a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful.'" *Sullivan v. Sch. Bd. of Pinellas Cty.*, 773 F.2d 1182, 1189 (11th Cir. 1985) (citation omitted); *see also Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) ("A claim is frivolous if it is

without arguable merit either in law or fact."). And "frivolity alone is not enough to warrant sanctions under Rule 11. The Court must also conclude that the 'person who signed the pleadings should have been aware that they were frivolous.'" *Squitieri v. Nocco*, 2022 WL 1136885, at *2 (M.D. Fla. Apr. 18, 2022) (quoting *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010)).

### 2. Discussion

In asserting Plaintiff's claims are frivolous, Defendants rely basically on the same arguments they raise in support of their motion to dismiss. Indeed, as Plaintiff points out, a substantial portion of Defendants' sanctions motion is copied and pasted from their motion to dismiss. (Dkts. 24 at 2; 24-1.) And Defendants advance no significant additional arguments for why Plaintiff's claims are so unreasonable as to be frivolous rather than simply meritless.[13] So, Defendants don't help their sanctions request much.

---

[13] The only new argument Defendants raise in their sanctions motion is that Plaintiff's claim under Georgia RICO constitutes a shotgun pleading. (Dkt. 22 at 23–24.) Defendants apparently believe that because Plaintiff alleged violations of the Georgia RICO Act "as a whole," (*Id.* at 23), it improperly failed to separate its causes of action by count. *See Cesnik v. Edgewood Baptist Burch*, 88 F.3d 902, 905 (11th Cir. 1996). But "a plaintiff need not separate her claims where they arise out of the

Still, the Eleventh Circuit has cautioned attorneys to "*stop and think* before filing" civil RICO claims. *Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir. 1991) (emphasis in original). "Rule 11's deterrence value is particularly important in the RICO context, as the commencement of a civil RICO action has 'an almost inevitable stigmatizing effect' on those named as defendants." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660 (S.D.N.Y. 1996) (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)). The Sixth Circuit explained:

> A civil RICO claim is an unusually potent weapon—the litigation equivalent of a thermonuclear device. For this reason, there is a strong temptation for plaintiffs to raise a RICO claim, even when the claim is obviously frivolous. To deter such conduct, courts have not hesitated to impose Rule 11 sanctions as a sanction for bringing frivolous RICO claims.

*Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 919 (6th Cir. 2020) (citation omitted). It further explained that "a sanction under Rule 11 is

---

same transaction or occurrence and defendants are provided with adequate notice." *Continental 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1138 (M.D. Fla. 2018). Plaintiff plainly set out the conduct it believes constitutes Georgia RICO violations, including the predicate acts supporting its claim, which all arise from the same purported zoning scheme. And Defendants have never argued that Plaintiff's complaint did not give them adequate notice of Plaintiff's claims. Regardless, the Court finds Plaintiff's claims frivolous for other, substantive reasons.

appropriate where a RICO claim is filed even though no reasonable and competent attorney would believe the claim has merit." *Bachi-Reffitt*, 802 F. App'x at 919 (citation omitted).  The Eleventh Circuit has granted attorneys' fees under Rule 11 for lawsuits raising similar allegations. *See, e.g.*, *Gordon v. Helmann*, 715 F.2d 531, 539 (11th Cir. 1983) (reversing denial of motion for attorneys' fees against plaintiff and plaintiff's attorneys for filing frivolous RICO claims).  So have other courts in this district.  *See Squitieri*, 2022 WL 1136885, at *3–*4 (granting sanctions where complaint "sorely failed to plausibly allege the first element of a civil RICO claim: a pattern of predicate criminal acts"); *Ghandi v. Ehrlich*, 2020 WL 5633416, at *8 (N.D. Ga. Sept. 21, 2020) (granting sanctions in RICO case where plaintiffs "had no good faith, viable legal theory or factual support to smear Defendants with allegations of criminal activity").

Plaintiff and its attorneys are sophisticated.  Assuming they undertook even a cursory review of the law, they should have realized trying to morph a local zoning dispute into civil RICO litigation would "ha[ve] no reasonable chance of success" under existing precedent. *Baker*, 158 F.3d at 524.  A RICO claim predicated on litigation activities

certainly is not a "novel legal argument or one of first impression." *Ghandi*, 2020 WL 5633416, at *8.  In fact, courts are clear that what are (at best) malicious prosecution claims cannot "suffice as RICO predicate acts" because of the "absurd results" that would follow.  *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 172–73 (E.D.N.Y. 2010).

Plaintiff's failure to identify any basis for overriding *Noerr-Pennington* immunity or even one false statement Defendants made throughout the course of the parties' zoning dispute highlights the frivolity of its claims.  Plaintiff conflates Defendants' disagreement with the adequacy of its zoning application—and their using completely proper legal channels to challenge that application—with fraud-based crimes.  The amended complaint also inherently contradicts itself.  How can Plaintiff claim with a straight face that it relied on the truthfulness of Defendants' petition in halting its purchase and development plans when it told Defendants as early as January 2022 that it thought their petition was misleading?  (Dkt. 11-8 at 2.)  What's more, Plaintiff at one point took Defendants' concerns with its zoning application at face value, sending additional details to Defendants about its plans for the

apartment complex and suggesting ways in which the parties could work together to maximize their rent prices.  (Dkt. 11-12 at 2.)  This alone shows that "Plaintiff's counsel had evidence that the bases for the underlying [petition] were *not* fraudulent . . . before [they] filed this action."  *Ghandi*, 2020 WL 5633416, at *9 (emphasis in original). Plaintiff simply "had no good faith, viable legal theory or factual support to smear Defendants with allegations of criminal activity—*i.e.*, mail fraud, wire fraud, and" lying to governmental entities.  *Ghandi*, 2020 WL 5633416, at *8.

Defendants also argue that Plaintiff filed this lawsuit "for the improper purpose of forcing Defendants to settle—*i.e.*, abandon their constitutionally protected right to file a petition objecting to the City's rezoning decision."  (Dkt. 22 at 24.)  Defendants say Plaintiff could only have filed suit to force settlement because it "has no rights to vindicate in court because it has no right to a dissent-free zoning process."  (*Id.* at 24–25.)  Defendants rely on Plaintiff's counsel's pre-litigation communications threatening legal action to argue that Plaintiff's "first instinct was to weaponize RICO to improperly 'extort [a] settlement.'" (*Id.* at 25 (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir.

1991).)  Defendants are right, especially considering Plaintiff's rezoning application sailed through the approval process despite Defendants' conduct, Plaintiff voluntarily delayed its purchase of the property (including when it was unaware of the Superior Court petition and in the time since the withdrawal of that petition), and Plaintiff has not identified any injury inflicted upon it by Defendants' actions.

The Court concludes no reasonable attorney could have thought Plaintiff's claims had any chance to succeed.  That—paired with Plaintiff's threat to file a civil RICO suit only 11 days after an unsuccessful attempt at reaching an out-of-court resolution over the zoning dispute—makes it clear Plaintiff intended only to force Defendants to spend money to defend this case and to pressure them to drop their challenge to the City's zoning decision.  Plaintiff says its complaint "does not seek settlement" but instead asks for damages for Defendants' purportedly unlawful actions. (Dkt. 24 at 19.)  But Plaintiff's pre-litigation communications say nothing about damages at all—rather, they demand Defendants drop their zoning challenge or face RICO litigation.  (Dkt. 11-8.)

At bottom, Plaintiff's claims are obviously "'foreclosed by binding precedent.'" *Mack v. Delta Airlines, Inc.*, 2014 WL 12628620, at *8 (N.D. Ga. Aug. 11, 2014) (quoting *Rodriguez v. United States*, 542 F.3d 704, 710 (9th Cir. 2008)). And any reasonable attorney would have known that. The Court will award Defendants reasonable attorneys' fees they incurred in defending against this litigation.[14]

## III.  Conclusion

The Court **GRANTS** Defendants' Motion to Dismiss (Dkt. 18) and Motion for Sanctions (Dkt. 22) and **DENIES AS MOOT** Plaintiff's Motion for Expedited Discovery (Dkt. 8) and Request for Oral Argument on Defendants' Motion to Dismiss (Dkt. 21). **IT IS FURTHER ORDERED** that Defendants shall have fourteen (14) days from the date of this Order to file an application for costs and fees incurred in defending this litigation.

---

[14] Because the Court finds that sanctions are warranted against Plaintiff, it denies Plaintiff's request to impose attorneys' fees it incurred in defending against Defendants' motion for sanctions. (Dkt. 24 at 20–21.)

**SO ORDERED** this 21st day of February, 2023.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE